12757

STATE v. GILBERT

(150 S. E., 321)

26

28

*Messrs. D. Carl Cook,* and *Philip H. Arrowsmith,* for appellant,

*Solicitor M. J. Hough,* and *Mr. Frank A. Miller,* for respondent.

November 7, 1929.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

Burch Gilbert and Willie Gilbert, brothers, were indicted in the Court of General Sessions of Darlington County for the murder of Graham Segars, a brother-in-law of the two defendants. Upon their trial before his Honor, Judge Dennis, and a jury, Willie Gilbert was acquitted, and Burch Gilbert was found guilty of manslaughter. From that verdict, and the sentence of the Court to 15 years' imprisonment, Burch Gilbert has appealed.

The theory of homicide from the viewpoint of the State is taken from the testimony of G. C. Segars, a brother of the deceased, the only eyewitness to the immediate difficulty, except the two defendants, who was the principal witness for the State. That theory was that the deceased, the wife of the deceased, and his brother, the witness, were at the home of the deceased about 1 o'clock in the daytime on February 7, 1928, the deceased at the time being asleep; that the two defendants arrived at the home of the deceased, Willie Gilbert inquiring for the deceased, and being informed that he was asleep; that Willie wished to know if the deceased had received a message from him that members of the Gilbert family did not desire the deceased to remain upon and any longer farm the lands then occupied by the deceased, owned by members of the Gilbert family. G. C. Segars told Willie his brother did not have to live on that land, as he had land of his own. About that time the deceased, who had awakened, came to the porch. Willie Gilbert inquired of deceased as to an alleged beating, on a recent previous occasion, of Irene (wife of the deceased and sister of the Gilberts) at the hands of the deceased, who denied being guilty of the offense charged against him. Willie Gilbert informed the deceased that one Vance Moore had said he had seen the deceased beating his wife. Willie Gilbert demanded that the deceased go with him to see Vance Moore about the charge, and, although Mrs. Segars en-

treated her husband not to go on the journey, he did start. Willie Gilbert and the deceased were accompanied by Burch Gilbert and the witness, G. C. Segars.

They left the home of the deceased in an Essex coach, owned and driven by Willie Gilbert. The deceased rode on the front seat by Willie, while Burch Gilbert and G. C. Segars rode on the back seat. All of the parties were entirely sober. Some 300 yards from the house, Willie Gilbert directly charged the deceased with "beating up" his wife, Irene Segars. The deceased denied the accusation, and asked Willie, "Didn't you hear her say I didn't?" To this question, Willie Gilbert replied, "No; she didn't say no such thing; she didn't say no such lie." The deceased proposed that they go back and see his wife, but Willie refused to do this, vilely cursed the deceased, and hit him. The deceased returned the blows, and several licks were passed, the witness endeavoring at the time to part the combatants. Willie said to his brother, "Shoot him, Burch," and Burch Gilbert, from the back seat of the automobile, fired one shot in the left temple of Graham Segars. Upon inquiry from the witness, Graham Segars said he had been shot. G. C. Segars inquired of Burch Gilbert why he had shot his brother, and Burch, using very offensive language, told the witness that he would blow his brains out if the witness said another word, and at the time pointed a pistol at the witness. The deceased was able, with the assistance of his brother, to get out of the automobile and walk to his home; walking away from the car in the direction of the home, some one back at the automobile fired another pistol shot. Later the deceased was carried by automobile to the home of his mother, about a mile distant; from there he was carried to the McLeod Infirmary in Florence, where he died that night. Before he died, the deceased declared that he "had no idea they would take him up and kill him like that." The wife of the deceased met him and the witness between the automobile and the home of the deceased, and said she knew they would kill Graham if he went with them,

and that was the reason she hated for him to go. According to the witness, each of the defendants was armed with a pistol, while both he and the deceased, his brother, were unarmed at the time of the homicide.

The statement as to the homicide, as related by the convicted defendant, Burch Gilbert, went this way:

The deceased and the defendant were good friends, and previous to the day of the homicide had never had any trouble. The Sunday night preceding the day of the killing he went to his mother's home, and there he found his mother, his sister, Mrs. Segars, and Roland Hicks, a police officer. He heard those three talking about a "fuss" Saturday night, engaged in by the deceased and his wife. On Monday, he was again at his mother's and while there his brother, Willie, made a report as to hearing about shooting at the home of the deceased. Burch said he thought he would go over and see what it meant, and Willie decided to accompany him Upon arrival at the home of Graham Segars, Willie inquired of Segars as to the fussing at the party Saturday night. The deceased positively denied that there had been a fuss, and inquired as to the source of the information the Gilberts had received. Willie Gilbert informed him that one Vance Moore had told him about it. Thereupon the deceased denounced Moore in very vigorous and offensive terms, and demanded that they go to see Moore about his statement.

This suggestion was agreed to, and the party started to Hartsville, where it was thought Moore could be found. Some 400 yards from the home of the deceased, he said there was no use in going to see Vance Moore. Burch Gilbert then said, "Irene told me last night that you beat her up," and that the statement was made in the presence of Roland Hicks. Following that statement of Burch Gilbert, the deceased cursed the former vilely and hit him, and at the same time reaching for his pistol; deceased got his pistol and shot, the bullet singeing a little bit of hair of Burch, and, immediately following, Burch Gilbert fired his pistol and hit the de-

ceased in the temple. After the shooting, the deceased and his brother, G. C. Segars, got out of the automobile and went in the direction of the home of the deceased. There was no further shooting, and the defendants soon left the place of the difficulty. Burch Gilbert further testified that the deceased was in the habit of carrying a pistol, and that he was dangerous when drinking.

That some of the exceptions may perhaps be better understood, it is well to note the fact that the widow of the deceased, Irene Segars, testified at the coroner's inquisition, and, while her testimony as there given is not in the record, we gather, from the questions asked her and her answers thereto, that her statements at the inquest were not at all favorable to the cause of the defendants, her brothers. Some 14 months after the death of Graham Segars, his widow married one Mozingo, and, at the trial of the case in the Circuit Court, she testified as a witness for the defense, repudiating at that time much of the testimony she had formerly given.

Exceptions 1 to 11, inclusive, relate to the conduct of the presiding Judge in the exclusion of certain testimony, sought to be brought out from Mrs. Mozingo by the defendants; interruptions of her testimony, and certain questions asked, by the Judge. Mrs. Mozingo told of going with Officer Hicks to her mother's home on Sunday night preceding the day of the homicide, the visit being due to the alleged occurrences between her husband, the deceased, and herself on the Saturday night preceding. She stated that her mother, in the presence of her brothers, the defendants, asked her what was the matter. The Court admonished her not to go into any conversation with her mother, and he also ruled that any conversation between the mother and Hicks was incompetent. A little later the witness stated her mother told her that she had heard that "we [deceased and his wife] had a fuss"; and she began relating her reply to her mother's remark, when the Court told the witness not to tell what hap-

pened in reference to the conversation, but to state the object of her visit to her mother's. By the first exception, the rulings of the Judge in this connection are questioned; the appellant contending that the evidence sought to be introduced was relevant.

In making this exception, the appellant overlooks the fact that the witness was later permitted to go very fully into the matters she endeavored to talk about. Soon after the interruptions by the Judge, Mrs. Mozingo testified that she told her mother, in the presence of her brothers, that her husband tried to kill her the night before, although she did not do anything to cause him to whip her; that she went after water on the back porch of the home where a party was being held, and when she looked around her husband was beating her. There could be no error on the part of the Judge, prejudicial to the appellant, when the witness was permitted to give the testimony it was desired she should give.

Mrs. Mozingo made the statement that, prior to the occasion of her visit to her mother's home, referred to above, she had never "reported anything" (presumably, differences between her husband and herself) to her brothers or mother. She was asked, "Why?" and the presiding Judge said she need not go into any reason for it. The appellant thinks there was error thereby. The fact that she may have given her brothers, the defendants, information as to the conduct of her husband toward her may have been relevant, but we cannot see how it was at all relevant, and certainly not beneficial to the cause of the defendants, to show that they had never received any information from their sister as to misconduct on the part of the deceased. Assuredly, the reason of the witness for not giving the information, if there was such to be given, unless the reason had been imparted to the defendants, could have thrown no light upon the issues involved in the trial. So the second exception, raising the question referred to, is without merit.

Mrs. Mozingo told of her trip with her husband by automobile from her mother-in-law's home to her own home on the morning of the day of the homicide. She said Graham drove the car "pretty fast, going from one side of the road to the other." Asked, "Why did he do that?" she said, "I could not tell you; he was drinking, I guess." The Judge interposed: "Don't guess about it," and the appellant says that therein there was reversible error (third exception). The caution of the Judge was rightfully given, under the circumstances. The widow of the deceased, who had taken to herself a new husband, was pretty hard on her former spouse, who had been slain by her brother. In her testimony, she was charging the deceased with the crime of driving an automobile under the influence of whiskey. She should not have *guessed* about so serious a matter; and the remark of the presiding Judge had perhaps a beneficial result of causing the witness to swear a little stronger as to her former husband's conduct. After the remark of the Judge, in response to inquiries from appellant's counsel, Mrs. Mozingo said that Graham was drinking, and, when she remonstrated with him as to his manner of driving, he used very profane language, which she glibly related, and that he even said he did not care if the automobile turned over.

Mrs. Mozingo testified that, shortly before the homicide, two brothers of the deceased, F. P. and John Segars, brought the *gun* to the home of the deceased. Following that statement, in reply to questions of appellant's counsel, she said that those two brothers brought *guns* there. Then she was asked by counsel, "Are you positive of that?" and she answer in the affirmative. There was objection on the part of the State to counsel's repeating, which was sustained. The fourth exception imputes error to the trial Judge for that reason. We fail to find the error, for both the witness and the attorney for the defendants continued their repetitions, ignoring absolutely the ruling of the Court. In response to further questions, the witness repeated that

F. P. and John Segars brought "the gun there," and later said they brought two guns there.

After bringing out from Mrs. Mozingo the fact that she had testified at the inquest, in reply to a question by appellant's attorney if she had told the truth at the inquest, the witness replied in the negative. She was then asked why she had testified falsely there, and counsel for the State objected. The ground of the objection was that it was not proper for the defendants to impeach their own witness, and the Judge sustained the objection, with the statement, "I never heard of such a thing." Counsel for the appellant insisted that the testimony was competent, for the reason that a witness, who has been tampered with, suborned to commit perjury, or has any fear or duress, may give a reasonable explanation as to his conduct. A question endeavoring to show something of the kind, indicated in the reasons assigned for the admission of the testimony, was asked; but the Court would not permit the question, ruling that no attack had been made on the witness, and nothing then appeared to show what she had formerly testified. The fifth exception imputes error to the Circuit Judge as to the rulings made by him.

It is a correct legal proposition that a party may not impeach his own witness. *State v. Jackson,* 7 S. C., 283, 24 Am. Rep., 476; *Bauskett v. Keitt,* 22 S. C., 187; *State v. Johnson,* 43 S. C., 123, 20 S. E., 988; *State v. McKay,* 89 S. C., 234, 71 S. E., 858. The presiding Judge in the case at bar evidently had this principle of law in mind.

We do not think it was the purpose of appellant's counsel, however, to impeach the testimony of the witness, Mrs. Mozingo, in one of the manners in which impeachment is permitted, by showing that the witness had testified contrary to the testimony she had given at the inquest. We think the purpose was to show why the testimony of the witness at the inquest was not in accord with her testimony at the trial in the Court of General Sessions. Counsel evi-

dently expected the prosecution to show, on the cross-examination of the witness, that her former testimony conflicted with her statements at the trial.

There was no objection, as we see it, to permitting the defendants to bring out testimony from the witness to show the reasons for the change made by her in her testimony. The failure of the Judge to allow it to be done at that time, however, was not prejudicial error in this case, for the reason that later on, on re-direct examination, Mrs. Mozingo testified that her former testimony at the inquest was due to persuasions by her deceased husband's people, and because the brothers of her deceased husband had promised her that they would keep her up as long as she lived.

The sixth exception charges error because the presiding Judge allowed Mrs. Mozingo to be asked, on cross-examination, if about the time of the homicide she did not have unkind feelings to the defendants, due to some land deals between them and herself. The record shows the witness was asked this question, "You did not feel very kindly—" and immediate objection, even before the question was concluded, was made by defendants' counsel. The Judge held that the question was proper to test the credibility of the witness, but it is not shown that there was any answer to the question, or any further attempt to ask it. It seems to us that counsel for the State rather agreed with the objection of the defendants, and did not pursue the matter further. However, the Judge was correct in his ruling. The exception is not meritorious.

The seventh and eighth exceptions relate to the cross-examination of Mrs. Mozingo, and it is urged that the examining counsel was allowed to make unfair statements and comments on her testimony during the examination, and there was needless repetition on his part. Cross-examination must be left very much to the discretion of the trial Judge and we find no abuse of his discretion as suggested.

On cross examination, Mrs. Mozingo was asked if she had made a certain statement at the inquest, and she replied, "I didn't know what I was saying." The Court directed her to answer the question, and the appellant alleges, in his ninth exception, that there was error. The error is not apparent to us. It was the duty of the witness to answer a proper question, and the question was proper. In addition, the witness still refused to answer, so the record shows, even after the Judge had directed her to do so. The appellant's complaint could be more properly directed to his witness for not answering, than to the Judge for seeking to get her to answer.

On re-direct examination, Mrs. Mozingo was asked, in the first question put to her, if she had any explanation for making the testimony she had given at the inquest, and she replied that she had none. Counsel then asked her if she had told the truth at that time, and an objection to the question was sustained. Judge Dennis said that the witness should not be asked that general question, but that counsel might pick out anything that she wanted to vary, after it was shown that something had been varied, and might inquire as to such variations. The ruling of the Judge is challenged in the tenth exception. The record shows that counsel, following the course suggested by the trial Judge, called the attention of the witness to statements in her testimony at the trial which conflicted with her former statements at the inquest, and that the witness replied that she did not remember making the statements at the inquest attributed to her, but, if she had made them, they were made because her husband's people had persuaded her to do so. Since the defendants were allowed to examine the witness very fully as to her contradictory statements, we are unable to find any error in the holding of the Judge.

On re-direct examination, Mrs. Mozingo was asked, "What inducement was offered you by the Segarses to testify as you did at the inquest?" and, "Did Mr. Segars make you any proposition to get you anything, if

you would testify?" The Judge ruled that these questions
were leading, and we think he was correct thereabout. When
the questions were framed differently, the witness was per-
mitted to answer, and to say that her husband's brother
had induced her to testify as she did at the inquest by his
promise that "they would keep me up as long as I lived." We
cannot find any error in this connection, as claimed by the ap-
pellant in his eleventh exception.

When Willie Gilbert was on the witness stand, he
testified that in the difficulty, in which Graham
Segars was killed, he saw Segars pull a pistol out of
his pocket. Counsel asked practically the same question
again, and the Judge said, "Don't repeat." In the twelfth ex-
ception, it is urged that this was error, and especially so be-
cause counsel for the state was allowed to repeat very much
in the cross-examination of Mrs. Mozingo. We must not lose
sight of the fact that more latitude in the cross-examination
of a witness is allowed than in direct examination of one.
As indicated before, these matters must be left very much
to the discretion of the trial Judge, and we see no abuse of
discretion in this instance.

Soon after the trial began, the defendants requested
that the jury be allowed to inspect the automobile in
which the parties to the difficulty were riding at the
time the killing took place, but Judge Dennis ruled that there
was no necessity for such inspection. Later on in the progress
of the trial counsel for the state joined in the request for the
inspection, and the trial Judge allowed the jury to see the
automobile. The appellant complains in the thirteenth and
fourteenth exceptions that it was error for the Judge to re-
fuse the defendants' request for the inspection, and later on
to agree thereto when the state joined in the request. Since
the appellant secured what he wanted done, we do not see
how he can complain.

On the cross-examination of the defendant, Willie
Gilbert, he made the statement that he had testified at
the inquest, not because he wanted to do so, but be-

cause the sheriff of the county notified him to be there. The Judge took part in the examination by asking the witness, "Did he [the sheriff] tell you you must testify?" again by asking him, "Told you to be there and testify?" and "The sheriff said that?" These questions the witness answered in the affirmative. In his fifteenth exception the appellant urges that there was no necessity for the Court to ask these questions, and thereby take part in the examination, and that the questions of the Judge indicated his opinion as to the lack of truth in the answers of the witness. We think the purpose of the Judge was to ascertain for sure if the witness intended to claim that he had been forced by the sheriff to testify against his will, and it was proper for the Judge to elicit that information.

W. R. Segars was offered as a witness for the defendants, to testify that the general reputation of the deceased as to "peace or violence" was bad. As usual in an examination of that kind, the witness did not understand the first question put to him. He was asked the preliminary question, if he knew that general reputation, and he replied, "He was bad to drink." The Judge said, "That was not what he asked you." The witness then said, "Well, I heard of several rows." Judge Dennis said, "That was not what he asked you; he asked you if you knew his reputation for peace or violence." The appellant charges in his sixteenth exception that, by taking charge of the examination of the witness, the Court tended to confuse the witness, and destroyed the effectiveness of his testimony. Perhaps the presiding Judge was a little impatient, but we can see no reversible error. To the contrary, he helped the defendants to bring out from the witness proper answers to the questions, for the witness soon said that the reputation of the deceased was bad.

Coroner Kistler was put up by the State to show that Mrs. Mozingo had made certain statements in her testimony at the inquest, which she denied

at the trial that she had made. The State was seeking to show by Mr. Kistler that Mrs. Mozingo did not appear to be under any excitement or fear or duress when she testified before him. The attorney for the State went directly after the information he was seeking. The Judge seemed to think that a preliminary question should be first asked, and he proceeded to ask it, as follows: "Mr. Kistler, did you observe the demeanor of this witness, the way she acted, pay any attention to that?" The witness replied, "She seemed to be excited." The Judge said: "I did not ask you that; did you notice her?" The Coroner said, "Not particularly." Judge Dennis then asked: "Did you notice her enough to say whether she seemed excited, or anything of the kind?" The Coroner then replied, "I think she seemed to be excited." The Court stated, "Mr. Spears, I did not mean to elicit that answer." The late Hon. J. Monroe Spears, so well beloved and remembered by this Court, who appeared for the defendants, replied to the remark of the Judge in his quick and characteristic way, *"I know it."* The appellant now says (seventeenth exception) that the presiding Judge unnecessarily took part in the examination of the witness, that he elicited an answer favorable to the defense, and that his remark to Mr. Spears showed his lack of sympathy with the defense. We think it is clear that Judge Dennis only meant by his remark to say he could not get the witness to understand fully the question he had asked him. Mr. Spears, always acute to the interest of his clients, readily seized upon the opportunity to use the remark of the Judge for the benefit of those whom he represented. We are unable to see any error in the incident referred to.

The remaining exceptions, four in number, urge that a new trial should be granted by this Court, and that the new trial asked for below should have been granted by the trial Judge, for the reason that the attitude of the presiding Judge at the trial was markedly hostile toward the appellant, that his language and demeanor in his rulings and remarks,

in the admission and the rejection of testimony, were all such as to show that he had no sympathy for the defendants, or their cause, and that the jury could not fail to be influenced by the conduct of the Judge. As evidence of the suggestion that the appellant did not have a fair and impartial trial below, all the exceptions hereinbefore disposed of have been cited to the Court as bearing upon the general charge made in the exceptions now under consideration.

The attorney who presented this appeal and argued the case at the bar of the Court, Hon. P. H. Arrowsmith, did not appear for the defendants in the trial below; he having been employed since that trial on account of the death of Hon. J. M. Spears. Mr. Arrowsmith has presented an unusually able argument in support of these exceptions, and because of that the Court has read and re-read carefully the whole record of the trial in the Court of General Sessions.

It is difficult for this Court, we frankly admit, to fairly judge happenings and occurrences in a trial Court, because the printed record does not, and cannot, give a true picture of the things that have taken place there. We realize that the words of the trial Judge may not properly convey his actions and conduct, for the tone of his voice, the expression of his face, and even the twitching or twinkling of his eye, may indicate to the jury, even more forcibly than language can express, the feelings of a Judge in the trial of a cause. We have to assume, however, and we are glad to say that it is safe for us to assume, that a Circuit Judge in South Carolina seeks to be fair in a trial of one charged with a serious crime. At the same time, we know that judges of the Circuit Court, just like justices of this Court, lawyers, and other people, are but human beings, and sometimes are given to the commission of errors.

Reading the exceptionally strong argument of the able counsel for the appellant, we were almost convinced, we have to admit, for a little while, at least, that the Circuit Judge, in the trial of the case at bar, had gone rather far in exhibit-

ing his feeling. After a thorough study of the record, however, we are constrained to think that our first impressions were not sustained by the record. The Judge was rather impatient, and we say this in all fairness to him; but the impatience he exhibited does not justify this Court in reaching the conclusion so strongly urged by the appellant.

While the trial Judge interrupted the testimony of Mrs. Mozingo several times, and that of Willie Gilbert on one occasion, we do not find that he, at any time, interrupted in any way the testimony of the appellant, Burch Gilbert. No objection seems to have been interposed to any testimony given by the appellant, and, consequently, the Judge was not even called upon to rule as to the admissibility of any of his statements. The appellant and his counsel were given a pretty free hand, not only by the Judge, but by the Solicitor and his assistant counsel. The charge of the Judge must have been entirely satisfactory to the appellant, for there is no exception to anything contained therein. If the Judge was in any way unfair to the defendants, such unfairness, it seems to us, would have affected both of the defendants. As a matter of fact, the evidence against the defendant Willie Gilbert, except as to the actual killing of the deceased, was just about as strong as it was against the appellant. The interruptions by the Judge of the testimony of Willie Gilbert seems to have caused no unfavorable impression as to that defendant, for the jury acquitted him. If the interruptions of the other witnesses had any effect in the trial, it seems to us they would have been reflected in a verdict against Willie Gilbert, as well as in the unfavorable verdict to the appellant.

The duty of a trial Judge has been gone fully into by this Court in several cases, particularly *Norris v. Clinkscales,* 47 S. C., 488, 25 S. E., 797, *Powers v. Rawls,* 119 S. C., 134, 112 S. E., 78, 83, *Sumter Trust Co. v. Holman,* 134 S. C., 412, 132 S. E., 811, and the two recent cases of *State v. Furtick,* 147 S. C., 82, 144 S. E., 839, and *Lorick & Lowrance v. Walker,* 147 S. C., 178, 145 S. E., 33. Briefly

stated, the main principle running through all these cases, as taken from *Powers v. Rawls, supra,* is that "a trial Judge should not, by the interrogation of witnesses, by remarks in ruling upon evidence offered, or by comment upon the facts in relation to interlocutory motions, indicate opinions or express views reasonably calculated to influence the jury in deciding a material issue of fact."

We do not think the Circuit Judge violated the well-recognized rule, and the exceptions under review are overruled.

The judgment of this Court is that the judgment below be and the same is hereby affirmed.

Mr. Chief Justice Watts and Messrs. Justices Cothran, Stabler and Carter concur.