15012

STATE v. NELSON

(7 S. E. (2d), 72)

July, 1939.

*Mr. C. Yates Brown,* for .appellant,

*Mr. Samuel R. Watt, Solicitor,* for the State.

February 8, 1940.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

On the 9th day of April, 1939, the dead body of Goldie Mae Chapman, a child of nine years, was found about a mile from the Town of Enoree, in Spartanburg County. Her body was lying partly submerged in a small branch, with· limbs outstretched, face downward, and partly covered with heavy rocks. Enoree is a mill village where the deceased and her parents, and the defendant, resided. The testimony offered by the State tended to show that death had been brought about by smothering or suffocation several hours prior to the time the child was placed in the water. Suspicion pointed to the defendant and others as the perpetrators of the foul deed. The defendant was arrested and indicted upon the charge of murder. Her trial and conviction of manslaughter followed, and she now appeals to this Court.

The State introduced as a witness for the prosecution, Mrs. Monroe Pace, the mother of the defendant. This witness lived in Clinton, but at the time of the homicide she was visiting another daughter at Enoree, Mrs. Tom Thomas. After a preliminary examination by the solicitor, he undertook to elicit from this witness testimony directly implicating the defendant with the commission of the crime; testimony to the effect that the defendant had confessed to the

witness that she had smothered the deceased in the home of the defendant sometime between 2 and 3 o'clock on the afternoon of April 9th, and that the body which had been placed in a closet was thereafter removed after nightfall and taken from the house by her husband, Odie Nelson, and her brother-in-law, Tom Thomas. Mrs. Pace categorically denied that any such statements had been made to her by the defendant. She testified that she knew that her daughter had not committed the crime because she was at the home of the latter between 1 and 2 o'clock on April 9th, and remained there about one and one-half or two hours. That when she reached her daughter's house, Goldie Mae Chapman was there and remained there until about 3 o'clock or later, when the witness, her husband, Monroe Pace, and her sons-in-law, Tom Thomas and Odie Nelson, together with the defendant and Goldie Mae, left the house and walked up the road. She testified that her husband and her sons-in-law went to a ball game, and that Goldie Mae went on up the road alone, in the direction of her home. Throughout the case the State sought to show that the child was not seen alive after entering the defendant's house.

Some portions of the testimony of Mrs. Pace being unfavorable to the prosecution, the solicitor stated to the Court that Mrs. Pace had been sworn and examined as a witness at the inquest held by the coroner of Spartanburg County over the body of the deceased, and that the testimony of the witness was altogether different in essential and material points from the statements of the witness given at the inquest. The solicitor stated further that he had been taken by surprise, and upon this ground asked for permission to cross examine the witness.

Over the objection of counsel for the defense, the solicitor was thereupon allowed to cross examine Mrs. Pace concerning her testimony at the coroner's inquest, and to repeat to her certain statements which the prosecution claimed she had made in her testimony at the inquest, materially dif-

ferent from her testimony on the trial; testimony which, as heretofore stated, directly implicated the defendant as the perpetrator of the crime charged in the indictment. And the solicitor was also permitted, over the objection of the defendant, to read at length the questions and answers contained in the examination of the witness taken at the coroner's inquest, and was allowed to ask the witness if she did not make the statements so read to her.

Error is assigned to the lower Court in permitting the cross examination by the solicitor of Mrs. Pace, the State's own witness, and in this cross examination allowing him to read before the jury testimony purported to have been given by her at the coroner's inquest.

It appears that before the announcement of the ruling complained of, counsel for appellant exhibited to the Court a written notice which had been served upon the solicitor prior to the trial, which plainly advised him that Mrs. Pace would not testify on the trial of the case as she had testified at the inquest. Attached to the notice, and also shown to the Court, was an affidavit of the witness which also had been served upon the solicitor, containing a full statement of what she would testify to at the trial, and which completely repudiated the testimony given by her at the inquest.

The error assigned is that under the guise of surprise, inadmissible testimony highly prejudicial to the defendant was admitted, and that the State was permitted to do indirectly that which could not be done directly. We may say in passing that the testimony of Mrs. Pace at the trial accorded with the statements contained in her affidavit.

It is a well-established rule of evidence that a party is not concluded by the unfavorable testimony of his own witness, but may prove his case by other evidence. He is not precluded from proving any facts relevant to the issue, by any competent evidence, though it be a direct contradiction of the testimony of a former witness called by him. And, generally, when a witness is an unwilling one,

or hostile to the party calling him, or stands in a situation which makes him necessarily adverse to such party, his examination in chief may be allowed to assume something of the form and character of cross examination, at least to the extent of permitting leading questions to be put to him. Justly limited, and rightfully applied, the rule is a wise and salutary one; but if not properly limited and employed it may be very unjust and mischievous. *Bauskett v. Keitt,* 22 S. C., 187, 199; *State v. Johnson,* 43 S. C., 123, 126, 20 S. E., 988; *Pooler v. Smith,* 73 S. C., 102, 108, 52 S. E., 967; *State v. McKay,* 89 S. C., 234, 236, 71 S. E., 858; *State v. Campbell,* 150 S. C., 449, 148 S. E., 472; *State v. Gilbert,* 153 S. C., 25, 150 S. E., 321; *Scott v. International Agr. Corp.,* 180 S. C., 1, 184 S. E., 133.

Hence, the general rule that a party cannot directly impeach or discredit his own witness is subject to the exception that when a witness proves hostile or recalcitrant, the party calling him may probe his conscience or test his recollection to the end that the whole truth may be laid bare; and the extent to which this may be done depends upon judicial discretion exercised in the light of the circumstances in which the question arises. The State, however, contends that it not only had a right to cross examine the witness, Mrs. Pace, but also to read to her before the jury her testimony taken at the inquest, and to question her concerning her inconsistent statements as shown by such testimony, upon the ground of surprise.

The cases generally hold that for a party to be able to impeach his own witness on the ground of surprise or entrapment, it is essential that it appear that the party has been actually surprised by the testimony of such witness, or that he has been deceived or entrapped into introducing the witness because of such contradictory statements; and, as a corollary to this rule it follows that a party who introduces a witness will not be permitted to avail himself of a feigned surprise in order to get to the jury contradictory

statements of the witness previously given when such statements are otherwise incompetent as evidence. 70 C. J., Section 1227, page 1032, and cases cited in note. And in the same work (page 1035), it is said that where the side calling the witness is on notice that the witness will not testify in accordance with statements previously made by him, he cannot, of course, be impeached by the side calling him, on the ground of surprise.

Evidence of contradictory statements is theoretically evidence affecting credibility only, and is not substantive evidence of the facts embraced in the contradictory statements; but, nevertheless, evidence of inconsistent statements does often influence the jury, and, because of this, a party should not be allowed to interrogate his own witness in respect to previous inconsistent statements unless he has actually suffered surprise or entrapment.

It is uncontroverted that on July 25, 1939, two days before Mrs. Pace was called as a witness by the State, the solicitor was personally served with an affidavit signed by her, in which she repudiated the testimony given by her at the coroner's inquest, and in which she stated what she intended to testify to at the trial, all of which exculpated the defendant from any connection with the death of Goldie Mae Chapman. Mrs. Pace also stated in this affidavit that she was so distraught when she testified several months before at the inquest, she was not responsible for what she said; that she was sick at the time, under the treatment of a physician, had taken certain tablets which seriously affected her, and that she had been frightened by the officers, under constant questioning, prior to the inquest. In this affidavit she disclaimed any knowledge as to who killed the deceased, and asserted without qualification that any statement theretofore purported to have been made by her to the effect that her daughter, the defendant, Edna Nelson, had told her that she had killed the little girl, was false and untrue.

It appears uncontradicted, that Mrs. Pace was present in

the court room for three days, attending the trial, and could have been communicated with by counsel for the State if such communication had been desired. Under this state of affairs, we do not think the surprise of the solicitor was justified. With full notice of the fact that Mrs. Pace intended to change her testimony, she was called as a witness by the State, and under the circumstances reviewed, we do not think that the claim of surprise should have been sustained.

It follows that the Court erred in allowing the testimony previously given by Mrs. Pace at the coroner's inquest showing her inconsistent statements to be brought out, and permitting cross examination thereon.

It is also claimed that the trial Court erroneously refused to direct a verdict for the defendant at the close of all of the testimony. Counsel for the appellant contends in his able brief that the State relies wholly upon circumstantial evidence to establish the charge made in the indictment, and, to demonstrate its weakness and inadequacy in proving the guilt of the accused beyond a reasonable doubt, the evidence is analyzed exhaustively.

We have reviewed the record with a full realization of the importance of the case, and have reached the conclusion that the trial Court committed no error in submitting the case to the jury. The case for the State seems to depend wholly upon circumstantial evidence. The witness, Floyd Smith, testified that on the day the crime was committed he was working in his garden, which is located a short distance from the defendant's home, and that two or three minutes before two o'clock he heard something fall in the defendant's house, like a piece of furniture, and immediately following this noise he heard a child scream, and heard someone running in the house; that a child screamed again, which sound lingered a while, and then stopped suddenly.

The State's witness, Mrs. Esther Upton, testified that she occupied an apartment adjoining that of the defendant,

in the same building; that she was not at home on April 9th, the day the child's body was discovered, but returned home on Monday, April 10th; that on the following Tuesday or Wednesday, after Mrs. Nelson had been questioned by the officers, she stated to Mrs. Upton, "If you had been here, it would not have happened; you could have cleared me, I would have been in your part, or you would have been in mine, and it would not have happened." This witness also testified that several days prior to the homicide, the defendant told her that Goldie Mae was a s—of a b—. These and many other circumstances bearing upon the crime appear in the record.

We will not undertake a detailed narrative of the testimony, but as stated we think that under all the facts and circumstances it was proper to submit the case to the jury.

Judgment reversed, for the error pointed out, and case remanded for a new trial.

Mr. Chief Justice Bonham and Messrs. Justices Carter and Baker concur.