16565

STATE v. CLOUGH
(68 S. E. (2d) 329)

*Mr. Kale R. Alexander,* of Columbia, *for Appellant,*

*Mr. T. P. Taylor,* Solicitor, of Columbia, *for Respondent.*

November 30, 1951.

BAKER, Chief Justice.

The appellant, Rhett Clough, was indicted in the Court of General Sessions for Richland County, and was tried on the 14th day of September, 1950, and found guilty of the offense of grand larceny, and sentenced by the Presiding Judge, the Honorable Wm. H. Grimball, to "be confined at hard labor upon the public works of Richland County for a term of two years or for a like term in the State Penitentiary." This sentence was suspended and the defendant-appellant was placed on probation for a period of three years under the supervision of the South Carolina Probation and Parole Board, subject to the applicable law; and the conditions of the probation were therein stated, the same being in

accordance with Section 1038-3, Code of 1942. There was included in the sentence, among the various conditions of probation, the following designated as (a), (b), (c) and (i):

"(a) Refrain from the violation of any State, Federal or Municipal Penal Law

"(b) Avoid injuries (injurious?) or vicious habits of conduct

"(c) Avoid persons and places of disreputable or harmful character

"(i) Follow Probation Officer's advice and instructions regarding recreational and social activities"

Thereafter, on October 3, 1950, Judge Grimball, Presiding Judge of the Fifth Circuit, upon affidavits presented to him, without any notice to the defendant-appellant and without any opportunity of a hearing being given to him to make any showing in rebuttal, issued an order revoking the suspended sentence as originally imposed, less good behavior allowance as provided by statute, said sentence to run from date of commitment after suspension has been revoked.

Under this order (afterwards conceded by the State to be illegal and void) the appellant was arrested on the same day the order was signed, and committed to the South Carolina State Penitentiary where he remained illegally restrained of his liberty until after the completion of the proceedings out of which this appeal stems, on March 6, 1951.

On the —— day of February, 1951, upon the petition of the defendant-appellant Honorable Steve C. Griffith, Presiding Judge of the Fifth Judicial Circuit, at Columbia, in said Circuit, issued a Writ of Habeas Corpus directed to Wyndham Manning, Superintendent of the State Penitentiary, ordering that he produce the body of defendant-appellant before him at the Richland County courtroom on March 6, 1951, and bring with him the reason for the detention of said defendant-appellant, and all pertinent matters in connection with his alleged detention.

The order granting the Writ of Habeas Corpus returnable at the time aforestated did not fix any hour, but it is obvious from the record that appellant was produced before Judge Griffith on the morning of said date, and representing Manning and the State were the Attorney General of the State of South Carolina, by an Assistant Attorney General, and the Solicitor of the Fifth Judicial Circuit. When the matter was called for a hearing, counsel for Manning in his official capacity, and for the State, made no written return, but conceded that the order of Judge Grimball of October 3, 1950, revoking the parole and suspended sentence of the appellant was void and of no effect in that no warrant issued by a probation officer had ever been served upon him, and he had been committed to the Penitentiary merely on an *ex parte* showing by affidavits that he had violated the terms of his parole, and without the appellant having been given the opportunity of a hearing on said charges. In other words, it was conceded that the defendant-appellant had been illegally arrested and confined in the State Penitentiary for several months, and continued to be restrained of his liberty.

Prior to and subsequent to the above admission by counsel representing Manning, as Superintendent of the Penitentiary, and the State, various and sundry statements of attempted explanations of the illegal confinement of the appellant were made by them, and of course counsel for the appellant was also present making statements in behalf of his client; and Judge Griffith was making inquiries and statements. The outgrowth was that Judge Griffith announced that the appellant claimed that his parole should not have been revoked, and he was going to give him a hearing to determine if it should have been. To this, counsel for appellant in effect consented, objecting only to the postponement of the hearing until that afternoon at 3 o'clock.

Thereupon, Judge Griffith signed an order which had theretofore been prepared by either the Solicitor of the Fifth Circuit or by an Assistant Attorney General of the State of South Carolina, omitting the preamble, reading as follows :

"It is Ordered—

"1. That the revocation of probation by Judge Grimball be and it is hereby set aside and declared of no force and effect.

"2. That the South Carolina Probation and Parole Board through its Probation Officer do issue a warrant for the arrest of the said Rhett Clough for violating the conditions of his probation and report the arrest and detention to this Court, submitting thereto a written report showing in what manner the Probationer violated his probation and that said Probation Officer bring the said Rhett Clough before this Court for a hearing on said matter at Chambers in Columbia, S. C., at 3:00 p. m. on March 6th, 1951, at which time the parties hereto shall fully present the evidence for and against the revocation of the probation."

Following the signing of this order, A. J. Grygo, Probation Officer for that District, issued his arrest warrant charging that the appellant had violated the conditions A, B, C, and I, of his probationary sentence imposed by Judge Grimball at the September, 1950, term of the Court of General Sessions for Richland County in the following ways: "By committing an assault unlawfully, upon the person of S. L. Howell with a large board; By being under the influence of intoxicants at the time of said assault; By also making an unprovoked assault upon the person of one Rufus Neeley; both assaults occurring on September 23, 1950; such conduct being in violation of advice and instructions of probation officer."

Under this warrant, the defendant-appellant was arrested without ever having been released by the officers of the law, and at 3 o'clock P. M. on March 6, 1951, a hearing was held by Judge Griffith to determine if the appellant had violated the conditions on which his sentence had been suspended.

At the hearing before Judge Griffith in the afternoon of March 6, 1951, testimony was taken, at the conclusion of which and after argument of counsel, he signed an order,

revoking the suspended sentence of the appellant, and in which he found as a fact that the appellant had violated a condition of his probation, to wit, "committing an assault unlawfully, upon the person of S. L. Howell with a large board, on Sept. 23, 1950; such conduct being in violation of advice and instructions of the probation officer." This order required the defendant-appellant to serve the term provided for in the sentence as originally imposed, less good behavior allowance as provided by statute, "with defendant being given due credit for any portion of said sentence that has already been served in either the South Carolina Penitentiary or on a County Chaingang, said sentence to run from date of commitment, Heretofore on October 3rd, 1950."

The Questions Involved in this appeal as stated by appellant (the respondent did not file printed brief) are as follows:

"I. Did the Order of the Honorable Steve C. Griffith ordering the release of appellant and directing the South Carolina Probation and Parole Board, through its Probation Officer, to issue a warrant for the arrest of appellant violate the terms of Section 1059, Code of Laws of South Carolina, 1942?

"II. Did the Honorable Steve C. Griffith, Presiding Judge, err in permitting the Solicitor to cross-examine the State's witnesses over objection of appellant?

"III. Was there any relevant, competent testimony to support the finding of the Presiding Judge that the appellant was at the place that he was alleged to have violated his probationary sentence?"

So much of Section 1059 of the Code of 1942 as is directly pertinent to the issue here, reads: "No person who shall be delivered or set at large upon any writ of habeas corpus shall, at any time, be again imprisoned or committed for the same offense by any person or persons whatsoever, other than by the legal order and process of such court

wherein he shall be bound by recognizance to appear, or other court having jurisdiction of the cause; * * *."

Paragraph 4 of appellant's Petition for Writ of Habeas Corpus, and which was the concluding paragraph of the Petition, is as follows: "That your petitioner was serving a suspended sentence of two (2) years and probation for three (3) years, when he was unjustly and without cause taken to and incarcerated in the State Penitentiary. That no hearing of any type has been held in which your petitioner participated. That the petitioner was unjustly and falsely accused in having participated in a fight, which fight being the alleged reason for the revocation of his probation. That your petitioner is informed and believes that he is entitled to show this Court that he is being falsely and unjustly detained."

Judge Griffith construed this paragraph as a demand by the appellant for a hearing on the merits of the revocation of his suspended sentence, and this was concurred in by counsel for the appellant, the only objection made by said counsel being to the postponement of the hearing until 3 o'clock that afternoon. Such postponement for a few hours was granted so that the State and the Probation Officer could procure the attendance of their witnesses, and was not an abuse of discretion. The appellant had his witnesses present, and through counsel, stated that he was prepared and ready to enter into the hearing.

From the foregoing, it will be seen that appellant's first issue was not raised in the Court below, but to the contrary he was granted precisely what he sought in his petition, to wit, a hearing on whether his suspended sentence should be revoked; and having willingly entered into the hearing, he is now precluded from raising such issue for the first time on appeal.

Present at the hearing before Judge Griffith, was an identical twin brother of the appellant. During the direct examination of a witness, T. J. Goff, by the Solicitor, the following transpired:

"Q. Mr. Goff, do you run this place known as Goff's Place, out here beyond the Veteran's Hospital? A. Yes, sir.

"Q. Do you know this defendant, Rhett Clough, this man over here (indicating)? A. I thought I knew him. I know him when I see him. I hadn't never known Rhett too good.

"Q. Well, you have known him how long, in your own way? A. Well, I mean, I probably seen him about a dozen times in a couple of years.

"Q. Did you see him out at your place on the occasion we are talking about? A. Well, I thought I seen him until I seen his brother over there (indicating). I don't know whether I seen Rhett or him.

"Q. How long have you known Rhett Clough? A. I had never known him personally, sir.

"Q. How many times have you seen him out at your place? A. I couldn't tell you that, I don't know.

"Q. Well, how many times do you think you have seen him out at your place? A. I wouldn't say that either. I don't know how many times he has been to my place.

"Q. Well, do you have an idea how many times you have seen him out there? A. Mr. Taylor, I wouldn't know, because so many people come in my place and most of the time I am in the kitchen cooking.

"Q. Well, you said that you had seen him probably a dozen times—you were quick to say that—in the last couple of years. Now, I asked you about how many times you have seen him at your place? A. That's about the only times I have seen him at my place.

"Q. Are you confused now? Do you know, now, Rhett Clough sitting over there (indicating) from his brother? A. I know them now. Looking at them, you can tell there is a little difference, but I imagine, if you saw them at night, separated, I don't know whether you could tell the difference or not.

"Q. Well, did you see Rhett Clough at your place on this night we are talking about, 'yes' or 'no'? A. I seen him or Rhett one.

"Q. Didn't I talk to you today at 12:30? A. Yes, sir.

"Q. And didn't you tell me that Rhett Clough was at your place at this particular time we are talking about? A. Yes, sir.

"Mr. Alexander: If your Honor pleases, the Solicitor is contradicting his own witness.

"The Court: No, he is cross-examining him. I will grant him that privilege.

"The Solicitor: Now, you were sitting with me today— Mr. Strom went out and brought you to my office, didn't he? A. Yes, sir.

"Q. And in the presence of Mr. Strom, and Mr. Crouch and myself, didn't you tell us that Rhett Clough was at your place on this particular occasion? A. Yes, sir.

"Q. And didn't you tell us about his habits? A. I didn't say anything about his habits.

"Q. You didn't? A. I don't think I did.

"Q. We asked you about his drinking habits, didn't we? A. I said that I had never seen the man drinking.

"Q. Well, now, where do you get this about this brother situation? Who told you to express some doubt that it might have been his brother? A. Nobody told me nothing, but I hadn't seen his other brother, or his brother.

"Q. Well, how do you know it's his brother? Who told you it's his brother? A. I can look at them and tell it. They look like one another.

"Q. No one has talked to you since you saw us? A. No, sir.

"Q. All right. Well, how did you happen to see Clough, or whoever you want to say it was, out there that night we are talking about?

\* \* \*

"Q. Did you hear anybody make any statement as to how that man got hit? A. No, sir, not until the next day.

"Q. Well, didn't you ask how the man got hit and what happened? A. I asked how the man got hit, and nobody knew who hit him.

"Q. Goff, didn't you tell us at 12:30, sitting in my office, that when the man was getting in the car, this boy that got hurt, that someone made the remark that Rhett Clough had hit him in the mouth with a board?. Didn't you tell Mr. Pete Strom and all of us that? A. I said that somebody made a remark that Rhett hit him, but the remark about the board was made when he came out to take out the warrant the next day."

In the opinion of the Court in *State v. Nelson,* 192 S. C. 422, 7 S. E. (2d) 72, Mr. Justice Fishburne writing the opinion of the Court, discusses at some length when a party may assume something of the form and character of cross-examination of such party's witness; and if a jury had been passing upon whether the appellant had violated the terms of his suspended sentence, we would be inclined to hold that the trial Judge erred in permitting the Solicitor to cross-examine the witness Goff in such manner. However, we feel sure that Judge Griffith was fully capable of separating the "wheat from the chaff," and that he did not allow himself to be prejudiced by the questions (and testimony?) of the Solicitor.

We now come to the remaining issue. In *State v. White,* 218 S. C. 130, 61 S. E. (2d) 754, 756, it is stated: "The general principles of the law relating to the revocation of paroles, and hearings thereon, are established by our own decisions, as well as cases from other jurisdictions, and are accurately and admirably stated in the case of *State v. Miller,* 122 S. C. 468, 115 S. E. 742, 745, wherein the opinion was delivered by Mr. Justice Marion, and although this case related to the revocation of a suspended sentence, rather than a suspended sentence accompanied by a parole the rule is practically identical; and we quote the following extended and informative excerpt from this opinion: 'The nature of the inquiry and extent of the investigation to be conducted by the court of general sessions in determining whether the condition of a suspended sentence has been violated are matters that rest in the sound

discretion of that court. *People ex rel. Forsyth v. Monroe County Court of Sessions,* 141 N. Y. 288, 36 N. E. 386, 23 L. R. A. 856. But where the suspension is upon conditions expressed in the sentence imposed, the prisoner has a right to rely upon such conditions, and so long as he complies therewith the suspension should stand. It follows that the authority of the court of general sessions to revoke such suspension of sentence may not be capriciously or arbitrarily exercised, but should always be predicated upon an evidentiary showing of fact tending to establish violation of the conditions. Since, however, this court's authority to review the findings of a lower court upon such an issue is confined to the correction of errors of law, unless it appears that the action of the circuit court was influenced or controlled by some erroneous view of the law, or was wholly without evidence to support it (a judicial determination wholly without a supporting basis of fact being error of law), or amounted to a manifest abuse of discretion, a finding of fact by the court of general sessions as to a breach of the conditions of a suspended sentence is final.' * * *"

We think it unnecessary to enter into any detailed discussion of the testimony as disclosed by the record, but that it is sufficient to state that we have carefully read the record and find that there is sufficient evidentiary showing of fact tending to support the conclusion reached by Judge Griffith that the appellant committed an assault and battery upon the person of S. L. Howell, thereby violating Provision (a) of his suspended sentence.

All exceptions are overruled and the order appealed from is affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.