0069

Donna SUMNER, Appellant, v. A. Bert PRUITT, Jr., M.D., Respondent.
(314 S. E. (2d) 150)

Court of Appeals

*Francis T. Draine*, Columbia, *for appellant.*

*Thomas Dewey Wise*, Charleston, *for respondent.*

Heard Oct. 24, 1983.

Decided Feb. 10, 1984.

SHAW, Justice:

This appeal is from an order granting Dr. Pruitt's motion for a directed verdict in a medical malpractice suit brought by appellant Donna Sumner. We affirm because there is no evidence from which a jury might reasonably conclude Dr. Pruitt was negligent.

Mrs. Sumner contends Dr. Pruitt violated customary standards of practice by failing either to insert an intra-uterine device (IUD) during menstruation or to conduct a laboratory pregnancy test before insertion. The evidence of his failure to do either, she argues, was sufficient proof of negligence to require submission of the case to the jury. The injuries that Mrs. Sumner allegedly sustained as a result of the IUD insertion are nausea, cramps, heavy bleeding, infection, and fever. She also claimed to have suffered physical pain, humiliation, embarrassment and mental anguish from the abortion.

The evidence when viewed in the light most favorable to Mrs. Sumner shows that Dr. Pruitt fitted Mrs. Sumner with an IUD when she was six weeks pregnant. As a matter of standard medical practice, if not common knowledge, an IUD is not inserted during pregnancy. Mrs. Sumner had been taking low-dose birth control pills prescribed by Dr. Pruitt up to the time of insertion of the IUD. Low-dose birth control pills, when taken properly, are effective in preventing pregnancy at a rate approaching one hundred percent. Mrs. Sumner had "missed" her last two menstrual periods at the time of insertion. The menstrual flow she had otherwise experienced during the prior eighteen months while taking birth control medication had been abnormally slight. At the time of insertion, there was no menstrual flow.

Before insertion of the IUD, Dr. Pruitt conducted a manual examination to determine the position and size of the uterus. This type examination is frequently employed to detect pregnancy but is ineffectual in the first six weeks of pregnancy. Dr. Pruitt did not order a laboratory pregnancy test. Mrs. Sumner was not advised of the laboratory test, nor did she request one. The laboratory test that was available at this

time, at a cost of $15, was considered less reliable than a manual test on a woman pregnant for six weeks or less. After conducting the manual examination, Dr. Pruitt concluded the uterus was normal. He had no suspicion that Mrs. Sumner was pregnant when he inserted the IUD.

Expert testimony established that it was a customary standard of medical practice to insert an IUD during menstruation because menstruation facilitates insertion and indicates, though not conclusively, that the patient is not pregnant. Dr. Pruitt testified an IUD should not be fitted if there is a suspicion the patient is pregnant. He also acknowledged that if there is a possibility conception may have occurred since the last menstrual period, an IUD should not be fitted until pregnancy is excluded as a possibility.

It is undisputed Dr. Pruitt departed from a customary standard of practice by inserting the IUD when there was no menstruation. Proof of a departure from established standards of practice, however, does not necessarily make out a prima facie case of negligence if the departure is justified under the circumstances. *See Green v. Lilliewood,* 272 S. C. 186, 191, 249 S. E. (2d) 910, 912-913 (1978) (quoting 70 C.J.S. *Physicians and Surgeons* § 62, p. 1006 [1951] ).

We hold as a matter of law under the evidence presented that Dr. Pruitt's departure from this customary standard of practice was justified under the circumstances. *See King v. Williams,* 276 S. C. 478, 279 S. E. (2d) 618 (1981). An expert testified Mrs. Sumner's birth control medication often caused patients to miss menstrual periods. He testified further that because Mrs. Sumner had experienced abnormal menstrual flow while taking reliable birth control medication, Dr. Pruitt was not negligent in believing the medication was the cause of the missed periods. There was no contrary expert testimony to show insertion of the IUD when there was no menstruation was negligent conduct under the circumstances. Nor was there any expert testimony showing an average competent obstetrician would have detected the pregnancy by a manual examination during the first six weeks of pregnancy or would have ordered a laboratory pregnancy test under the circumstances. As a general rule, expert testimony is required in a malpractice case to show that a departure from a customary standard of care constitutes

negligence. *See Green v. Lilliewood,* 272 S. C. 186, 249 S. E. (2d) 910 (1978). Since there was no such testimony here, Mrs. Sumner failed to prove negligence on this particular.

We conclude there was no evidence from which the jury could reasonably find Dr. Pruitt was negligent in not suspecting Mrs. Sumner was pregnant. There was therefore no evidence that insertion of the IUD during pregnancy was negligent conduct. The trial judge properly granted Dr. Pruitt's motion for a directed verdict.[1]

Mrs. Sumner also assigns error to several of the trial judge's rulings pertaining to the examination of witnesses. First, the trial judge refused to permit her counsel to ask leading questions of Dr. Pruitt, whom Mrs. Sumner called to testify in her case in chief. Dr. Pruitt was undoubtedly an "adverse" witness because he was an adverse party in the litigation.[2] *See Reid v. Kelly,* 274 S. C. 171, 262 S. E. (2d) 24 (1980). The decision whether an adverse witness may be asked leading questions is discretionary with the trial judge. *White v. Southern Oil,* 198 S. C. 173, 17 S. E. (2d) 150 (1941). We find no manifest abuse of discretion or prejudice to Mrs. Sumner here because throughout direct examination Dr. Pruitt answered questions willingly and thoroughly.

Mrs. Sumner next complains the trial judge erred in refusing to permit the use of Dr. Pruitt's deposition to contradict and impeach his testimony. The trial judge disallowed the attempt on the ground Mrs. Sumner had called Dr. Pruitt to testify and could not be allowed to impeach him because he was her witness. It is "within the discretion of the trial judge to permit impeachment of a witness who was an

---

[1] As an additional ground for directing a verdict, the trial judge ruled the alleged negligence was not shown to be the proximate cause of the injuries claimed. After the pregnancy was discovered Mrs. Sumner elected to have an abortion rather than attempt to continue the pregnancy to term at the risk the IUD would cause a spontaneous abortion. We need not consider the trial judge's ruling on the proximate cause issue because we find no evidence of negligence.

[2] There is a difference between a witness who is "adverse" and one who is "hostile." A hostile witness is one whose testimony on direct examination surprises and is harmful to the party who called him. Leading questions and impeachment of witnesses shown to be hostile are permitted. *State v. Nelson,* 192 S. C. 422, 7 S. E. (2d) 72 (1940); *State v. Bissette,* 279 S. C. 98, 302 S. E. (2d) 344 (1983). In this case there was no surprise in the testimony of Dr. Pruitt; thus he was not a hostile witness.

adverse party." *Reid v. Kelly*, 274 S. C. 171, 262 S. E. (2d) 24 (1980). We hold that the trial judge abused his discretion because his ruling was controlled by an error of law. *Stewart v. Floyd*, 274 S. C. 437, 265 S. E. (2d) 254 (1980). The trial judge believed that this type impeachment was not permitted rather than being discretionary. This error does not require reversal, however, because we find no material variance between the deposition testimony offered and the trial testimony. Without such a variance there is no basis of a contradiction; therefore, the error did not prejudice Mrs. Sumner. *Anderson v. Elliott*, 228 S. C. 371, 90 S. E. (2d) 367 (1955).

The trial judge also refused to allow the same excerpts of the deposition to be used as substantive evidence.

Circuit Court Rule 87(D)(2) permits any part or all of a party's deposition, so far as admissible under the rules of evidence, to "be used by an adverse party for any purpose." The mere fact that the deposed party is present in the courtroom and available as a witness does not bar the deposed party's deposition from being used by the other party as part of his substantive proof [*see Community Counselling Service, In. v. Reilly*, 317 F. (2d) 239, 243 (4th Cir. 1936)] or for purposes of impeachment. *Proctor v. Colonial Refrigerated Transportation, Inc.*, 494 F. (2d) 89, 93 (4th Cir. 1974). Again, however, we find no prejudice to Mrs. Sumner from this error. Two of the three excerpts were allowed in evidence during cross-examination of Dr. Pruitt's expert witness, and Dr. Pruitt testified to the substance of the third excerpt. The initial exclusion of the deposition testimony, therefore, was not prejudicial. *Taylor v. Bridgebuilders, Inc.*, 275 S. C. 236, 269 S. E. (2d) 337 (1980); *Mullis v. Chaika*, 118 Ga. App. 11, 162 S. E. (2d) 448, 582 (1968).

Mrs. Sumner alleges error in the trial judge's ruling concerning a hypothetical question her counsel posed to Dr. Pruitt. Counsel for Dr. Pruitt objected to the question by specifically enumerating the material facts which were lacking in the question as posed. The judge sustained the objection, and counsel for Mrs. Sumner elected not to ask the question in the form the court would have required. We find the facts counsel for Dr. Pruitt sought to add to the hypothetical question were material facts relating to the subject

on which the opinion was sought. The trial judge therefore properly excluded the question as it was initially posed. *Greer v. Greenville County,* 245 S. C. 442, 141 S. E. (2d) 91 (1965); 88 C.J.S. *Trial* § 155, pp. 302-03 (1955).

The final issue for determination is whether the trial judge erred in permitting an expert witness for Dr. Pruitt to testify on certain matters in the absence of factual foundation. A factual foundation is required when an expert is asked to draw a conclusion based on the facts as stated. Here, however, the expert was asked to testify to the *existence* of facts which were not common knowledge and which were peculiarly within his knowledge. Such testimony does not require a factual foundation. It is admissible whenever an explanation concerning a technical matter is relevant to an issue of fact. See 31 Am. Jur. (2d) *Expert and Opinion Evidence* Sections 17 and 18 (1967). The trial judge acted within his discretion in allowing this expert testimony. *O'Kelley v. Mutual Life Ins. Co. of New York,* 197 S. C. 109, 14 S. E. (2d) 582 (1941).

We find no trace of argument in Mrs. Sumner's brief on three exceptions, numbered ten, eleven and fifteen. We thus consider these exceptions abandoned and do not consider them. *State v. Sullivan,* 277 S. C. 35, 282 S. E. (2d) 838 (1981).

We note finally that Mrs. Sumner's brief does not conform to the requirements of Supreme Court Rule 8, Section 2 because it does not contain a statement of the questions involved. Rather, it merely reprints verbatim the sixteen exceptions taken. Nor do many of Mrs. Sumner's exceptions contain a complete assignment of error, which is a violation of Supreme Court Rule 4, Section 6. These rules serve to require counsel to better focus arguments and aid the court in readily discerning the precise issues to be decided. The noncompliance here required us to devote more time than should have been necessary to resolution of this appeal. We point to these deficiencies to show an example of the all too frequent disregard of fundamental rules of appellate procedure.

Affirmed.

CURETON and GOOLSBY, JJ., concur.