STATE v. CARSON.

1. EVIDENCE.—Two prisoners being jointly charged with the same murder, so much of written statements made by the two prisoners separately, as charged each the other with the homicide without implicating himself, was improperly received in evidence.

2. IBID.—CONFESSIONS.—Should this court interfere with a ruling of the trial judge, admitting in evidence confessions of the prisioners, in so far as such ruling involved the finding of fact that the confessions were voluntary?

3. COMPLICITY IN CRIME.—The trial judge declined to charge "that even if the jury were satisfied that the deceased came to his death at the hands of one or other of the defendants, yet that they must, in order to convict, be satisfied as to which one did cause the death of the deceased," but did charge "that if both were present, and one did the killing and the other assisted, aided, counselled, or approved, they are both equally guilty." The trial judge erred in not further charging that if one

committed the homicide without the concurrence of the other, the slayer alone was guilty.

Only result concurred in.

Before KERSHAW, J., Orangeburg, January, 1892.

Indictment against Eddie Carson and Henry Smith for murder. So much of the charge to the jury as has any bearing upon the points discussed in the opinion of the court was as follows :

There is the statement made by these parties before the coroner. In regard to those statements I have this to say : that a confession made by a prisoner, which is not voluntary, is not received in evidence by the court, but it is for the court to say whether the evidence shows that it was voluntary or not. According to the best judgment I can form, there was no undue influence exercised over the minds of these prisoners to induce them to make a confession on this occasion, and from the best judgment I can form from the testimony, the confession or statement was voluntary. A confession is evidence against the man who makes it. It is not, of itself, evidence against the party against whom the charges are made, because human experience teaches us that where several parties are charged with a crime, they are very apt to try and shift the crime from one to the other. So the law does not accept the confession of one including and implicating others as evidence against those others. Even where they are sworn as witnesses, the rule is that their evidence will not be sufficient against accomplices in crime, unless it is corroborated by other evidence. It is for the jury to say whether there is corroboration or not. But the testimony of one is not to be considered as evidence against the other, unless it is corroborated by other circumstances. The evidence here is, that before the coroner, after being duly warned of the consequences of a confession, and warned not to implicate themselves, as it might be used against them, they, each of them, made a statement which has been read in your hearing. Without being verbally accurate in my recollection of those statements, they both tend, if they are true, to show that the deceased went in washing with them. One of the statements commences : "Me and the deceased and this other party went in washing together." Both of

them locate the deceased in the water. One of them says he saw him going down in the act of drowning. You will consider the statements in the light I have explained to you, and for what they are worth. Were these parties and the deceased in washing together? Was this boy drowned by accident? Or was his drowning caused or assisted by one or both of these defendants? * * *

Now, what effect has the testimony upon your minds? What do you believe about it? If you believe that this party was drowned, and that these two parties, acting together, caused his drowning, or one, the other being present, aiding or abetting, or counselling, or approving what was done—if the boy was drowned in that way, then it is a killing of a man without provocation or excuse, and it would be murder. But if, after considering all the circumstances, you should have a reasonable doubt that the deceased was drowned by one or both of these defendants, then you should acquit. I am asked to charge you that you must find out which one killed the deceased, but I charge you that if both were present and one did the killing and the other assisted, aided, counselled, or approved, they are both equally guilty. But if you have a reasonable doubt of the guilt of the parties, you will acquit either one or both, according to the nature of that doubt.

The jury returned a verdict of "guilty on the first count." A motion for new trial was made, and, after argument, was refused by the court, and the defendants were sentenced to death.

The defendants appealed upon several grounds. Those considered by the court are sufficiently stated in the opinion.

*Messrs. H. B. Brunson* and *Abial Lathrop,* for appellant.

*Mr. Jervey,* solicitor, contra.

July 4, 1892. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. The defendants were indicted for the murder of Charles Jenkins. The indictment contained two counts, the first charging that the death was caused by drowning, and the other that it was caused by a wound from a certain knife

or sharp instrument, both counts charging the defendants jointly as principals.

It seems that the deceased, Jenkins, and the defendants were young colored men—mere lads—and that they were brought together as servants, waiting on different families at a pic-nic on the banks of the North Edisto River, on June 6, 1891. That about 12 o'clock in the day Jenkins was missed. The defendants came up from the river about that time, and upon being asked where Jenkins was, they replied that they did not know; and after a little while one of them said that Jenkins, complaining of a headache, had gone towards the camp of the men working on the South Bound Railroad. As Jenkins did not return, search was made, and four days after (June 10) his body was found floating in the bend of the river, some distance below where the pic-nic was held. It exhibited a contused wound above the left eye, a fearful gash in the lower part of the abdomen, which must have been made with some sharp instrument, and, as the physician thought, affording evidence from its condition, that death had been caused by "drowning." As the defendants were last seen with the deceased, suspicion of foul play attached to them, and they were arrested and carried to the railroad camp above referred to, where they were tied to a tree and guarded until the next morning. During this time successive efforts were made to induce them to confess, but they refused to do so, saying that the last thing they saw of Jenkins on the day of the pic-nic he was going towards the camp, complaining of headache. No threats in direct terms were made against them, but the following and similar remarks were made to them: "You black scoundrels, you ought to be hanged; and I feel like doing it, and it ought to be done," &c.

The next morning the accused were taken down to the river, where the body was, and the jury of inquest was summoned to meet. Something of what occurred then appears from the testimony. Daniel Dover testified that "we tried to get them (the boys) to confess the evening before, when we arrested them, but they would not. * * * Next morning, while J. R. Dover and myself were talking about the jury coming to hold the inquest at the river, witness said you had better come out and tell the

truth about the matter. We did not say that the jury would hang them, but that we did not know what the jury would do when they took the body out of the water," &c. Davis Austin testified that he was summoned as one of the jury of inquest; that. knowing both of the boys, he insisted on their telling about it. "I offered no inducements to them, except to persuade them to tell the truth, telling them the advantages and disadvantages to the best of my ability. After we drew the body to the land, two or three jurymen would take them off a piece and ask them to confess. This is the time I explained to them 'the advantages and disadvantages of telling the truth.' It was after this the statements taken down in writing were made. Smith did not acknowledge that he did it, but he told on Carson. I told them if they were tried it would be proved on them, and they would be hung. The way they conflicted with each other led me to persist with them. I saw from the way they conflicted they were certainly guilty. I had my talk with them before they made their statements, which were taken down in writing by the acting coroner."

The acting coroner at the trial identified the written statements referred to, and testified that, "after examining the witnesses for the State, he told the defendants they could make statements if they desired; that I would take it down, but they need not do it. I told them they need not expect any reward or favor if they made a statement. Both Carson and Smith then made statements, which I have taken down. I do not think either of them knew what the other said, as I took the statements down separately." Defendants' counsel objected to the admission of the statements, on the ground that they were really not confessions at all, and, if so, that they were not free and voluntary; that in case of each defendant, his statement could have no other effect than to influence the minds of the jurors against the party other than the one making the statement; that there was not one word of acknowledgement or confession of guilt on the part of the person making the statement; that these statements could not be used against the party not making them.

The judge ruled: "This paper contains the statement of the prisoners with reference to the facts and circumstances of this

matter, after being warned of the effect of it, and made at their own request, I cannot exclude the paper; but I will say to the jury that where two persons are on trial, and one makes a statement which charges the other with crime, it is not evidence against that other. It is evidence against the party making the statements, but not against the other man. With that instruction to the jury, the solicitor may read the statement if he desires. (Defendants except.) The solicitor then read the statements to the jury, as follows:

*Statement of Henry Smith.*—Being first warned not to implicate himself, neither to expect favor or reward, says: "Me and Eddie were in washing at Pond Bluff. We were in by ourselves for a while. Charley Jenkins came to us and pulled off and came in. He kind of played about in the water, and while playing in the water Eddie cut him with a knife, and struck him with a root on the side of the head. After floating down the river a little piece he sank. I called to Eddie to help me catch him. He stood on the side of the bank, and I kept calling to him to come on, but he would not help me. I asked Eddie afterwards why he didn't help me, and he said if I had come he would have drowned himself. Eddie Carson said before Charley Jenkins came into the water that he would like to get Jenkins off so as he could give him hell.

                                             his<br>
"(Signed)        HENRY ⋈ SMITH."<br>
mark.

*Statement of Eddie Carson.*—Eddie Carson being first warned not to implicate himself, and not to expect any favor or reward, says, "that he was at Pond Bluff on 6th June, 1891, in company with Charles Jenkins and Henry Smith. Was in washing down below the bluff. While I was on the opposite side from them saw Charles Jenkins and Henry Smith in a tussel in the water, and saw Jenkins when he came up the last time. This happened before dinner; never told Smith I wanted to give him hell for getting between me and a girl; never saw any pistol in Henry Smith's clothes when he pulled off.

"(Signed)        E. D. CARSON."

The judge was requested to charge: "First. That in order to convict the defendants, or either of them, the jury must be satis-

fied from the evidence as to the cause of the death of the deceased. That if they were unable to determine whether the death was caused by drowning or by a wound from some sharp instrument, they must acquit the defendants. Second. That even if the jury should be satisfied that the deceased came to his death at the hands of one or the other of the defendants, yet they must, in order to convict, be satisfied as to which one caused the death of the deceased." Under the charge of the judge the jury found both the defendants "guilty on the first count," being the count which charged the killing by "drowning," and they were sentenced to be hung : but now appeal to this court for a new trial upon a number of exceptions, which are printed in the record, and need not be restated here.

The defendants, two colored lads. were indicted jointly for the murder of their comrade, Charles Jenkins, while bathing in the Edisto River. It seems that no one was present but the deceased and the accused. The defendants offered no evidence, and that for the State was purely circumstantial, or alleged "confessions" of the accused parties. Exceptions 1, 2, and 3 complain of error in admitting as evidence the verbal or written statements of the defendants as their "confessions." The defendants were indicted together for the same offence, but their statements, before given, made not the slightest reference to anything done in common· as charged, but, on the contrary, they were separate and distinct, agreeing in nothing, inconsistent and contradictory ; but each inculpating the other and exculpating himself. Can such unsworn contradictory statements be considered as within the rule as to the admissibility of "confessions" ? A confession is defined to be : "A person's admission or declaration of his agency or participation in a crime, and is restricted to such acknowledgments of guilt." ·"A confession is rather a fact to be proved by evidence. than evidence to prove a fact. It is not so much proof that a particular thing took place, as it is a waiver by the party charged of his right to have certain facts alleged against him technically proved." See 3 Am. & Eng. Enc. Law; 438, Whart. Crim. Evid. (9th ed.), section 623, and notes.

It is true that a confession of one of two or more defendants,

implicating himself and others, is competent evidence against himself, and should be proved as made, including the names of his confederates, as stated by him, the jury being instructed that it is evidence only against the party who made the confession. *State* v. *Workman,* 15 S. C., 541, and *State* v. *Dodson,* 16 *Id.,* 463. The Circuit Judge did inform the jury that the statements were not evidence, except as against the one making it. That is to say, as against Smith, they had the right to disregard all that Carson said, and as against Carson all that Smith said. The defendants were on trial together, and if the jury could find it practicable to follow implicitly the instructions (which is very doubtful), then the result would necessarily be, that nothing was left but a blank paper, with no confession at all. The case is peculiar in this respect, that neither defendant implicated himself in the statement made by him ; and we do not understand that, where two persons are on trial for the same offence, one of them may, without in the least degree implicating himself, charge his co-defendant with criminal conduct, under the form and pretence of making a "confession" of his own participation in the crime.

But if the statements reduced to writing by the acting coroner were, in the proper sense of the word, "confessions," were they *free and voluntary ?* Mr. Greenleaf states the rule thus : "Before a confession can be received in evidence it must be shown that it was voluntary. The course of practice is to inquire of the witness, whether the prisoner had been told that it would be better for him to confess, or worse for him if he did not confess, or whether language to that effect had been addressed to him," &c. 1 Greenl. Evid., § 219. It is not always easy to determine whether a confession is or is not voluntary. Each case must, to a considerable extent, depend upon its own circumstances, affected, as stated by the same learned author, "by the age, experience, intelligence, and constitution, both physical and moral, of the party." The books are full of cases upon the subject, which are not always in accord as to the facts and circumstances which will exclude confessions. But if the cases differ in some respects, they certainly do not as to the importance of maintaining the principle upon which the rule is based : the great common law

doctrine, "that the guilt of a prisoner must be disclosed by other testimony than his own confession. *Nemo tenetur prodere seipsum.*"

We fail to see in the case anything to justify the remark that the statements were made "at the instance of the defendants themselves." On the contrary, it seems that they were very reluctant to make statements. It is true that each of the statements written by the coroner commence with the remark that the party (naming him) "being first warned not to implicate himself, or to expect any favor or reward," &c. That, of course, had reference to the moment when the papers were signed. But the whole evidence discloses that, from the time of their arrest until the papers were written, the defendants were approached by numerous persons, including some on the jury of inquest, and begged to confess. They were told that it would be better for them to tell the whole truth about it, that they ought to be hung, but that they did not know what the jury would do when they took the body of Jenkins out of the water, &c. We cannot resist the conclusion that inducements of hope and fear were held out to these boys to obtain confessions, and that the effect of these inducements remained upon them up to the time the statements were taken down by the coroner. All the writers upon the subject agree in saying that a confession, in order to be admissible, must be free and voluntary; that it must not be extorted by any sort of threats or violence, nor obtained by any direct or implied promises; nor by the exertion of any improper influence, because, under such circumstances, the party may have been influenced to say what is not true, &c. The alleged confessions in this case were entirely unreliable, as being not only inconsistent, but absolutely contradictory.

The judge was requested to charge: "That even if the jury was satisfied that the deceased came to his death at the hands of one or the other of the defendants, yet that they must, in order to convict, be satisfied as to which one did cause the death of the deceased." This the judge declined, but charged as follows: "Now, I am asked to charge you that you must find out which one killed the deceased; but I charge you that if both were present, and one did the killing and the other

assisted, aided, counselled, or approved, they are both equally guilty." It seems to us that this charge was correct, as far as it went, but that it did not go far enough. It ignored the view that one of the defendants might have done the act, without the concurrence or aid of the other. If there had been proof of a conspiracy on the part of the defendants to inveigle the deceased into the water and then kill him, and he had been killed by one of them, in the prosecution of that common purpose, then surely the act of one would be the act of both, and they would "be equally guilty." But the meeting being casual, without concert or combination, if one of the defendants, upon sudden quarrel or other cause, without the aid or support of the other, took the life of the deceased, *he* alone who did the act would be responsible; and the parties were entitled to have the jury so charged. "One who is present, aiding and abetting others in a common purpose, is responsible for the act of any one of the party, provided the act was in pursuance or incidental to such purpose. *Frank* v. *The State*, 27 Ala., 37. But if the act committed has no connection with the common object, the party committing it is alone responsible for the consequences. When parties combine to commit an offence, one who did not consent, and was not privy to the fact, is not responsible." 4 Am. & Eng. Enc. Law, 620.

The judgment of this court is, that the judgment of the Circuit Court be set aside, and the case remanded for a new trial.

MR. CHIEF JUSTICE MCIVER. I concur in the result. The statements said to have been made by the prisoners and taken down in writing by the coroner were improperly received as evidence. They were in no sense confessions, but amounted to nothing more than crimination and recrimination of each other. While it is quite true that it is competent to show that the accused has made contradictory statements as to the matter under inquiry, as a circumstance in aid of other testimony tending to show his guilt, yet when there is no other testimony tending to fix guilt upon the accused, it seems to me that the fact that the accused has made contradictory statements in regard to matter not directly connecting him with the crime charged, such statements are entirely irrelevant, and are, there-

fore, incompetent. In this case it does not seem to me that there was any such testimony, except the simple fact that the deceased was last seen in company with the prisoners, who, when asked: "Where was Charley Jenkins, they replied that they did not know. After a while one of them said Charley Jenkins had gone towards the camp, complaining of a headache," *but which one made that remark did not appear ;* and that they both continued to deny any knowledge of what had become of the deceased, Jenkins. While, therefore, it might have been competent to introduce evidence that the prisoners, after having made these denials, admitted that they had seen Jenkins when he was drowned, it certainly was not competent to admit the statement of Smith that he had seen Carson take the life of the deceased, or the statement of Carson that he had seen Smith commit the fatal deed; for that was nothing more than hearsay evidence, upon which there is great reason to fear that the verdict of the jury was based.

I am not, however, prepared to assent to the doctrine that this court has the power to review and reverse the finding of the Circuit Judge, that a given confession was made freely and voluntarily; for that presents a question of fact, of which this court cannot take jurisdiction, which must necessarily, in the first instance, be decided by the judge in order to determine its admissibility; but when admitted, it is for the jury to say whether they believe that the confession was free and voluntary, and accept or reject it accordingly, unless they are otherwise satisfied that it is really true.

MR. JUSTICE POPE concurred in the result.

Judgment reversed.