16404

## STATE v. SHIELDS
(61 S. E. (2d) 56)

Messrs. *John C. Williams* and *Thomas W. Whiteside*, of Spartanburg, *for Appellant,*

Messrs. *Samuel R. Watt, Solicitor,* and *T. E. Walsh*, of Spartanburg, *for Respondent.*

September 6, 1950.

Oxner, Justice.

Appellant, Claude Shields, was convicted of burglary. The jury recommended mercy and the trial Judge imposed a sentence of seven years. The only question raised by the exceptions is whether the Court erred in refusing a motion

for a directed verdict upon the ground that the evidence was insufficient to sustain the charge.

On the night of November 8, 1949, the residence of Dr. Hugh S. Black in the City of Spartanburg was forcibly entered while the occupants were away and a metal safe, weighing about 700 pounds and containing approximately $200.00, a war bond and some jewelry, was removed from a bedroom closet. The fact that a burglary was committed is undisputed. Appellant's contention is that the evidence is insufficient to connect him with the crime.

One of the witnesses for the State, Edward B. Patterson, who admittedly participated in the burglary, testified substantially as follows: On the day preceding the crime, he and one Butler went to Spartanburg for the purpose of getting in touch with a person named Claude Shields whom they had never met. About 7:30 that night they went to the Pecan Grove, a night club near the City of Spartanburg operated by appellant, and met the proprietor who stated his name was Claude Shields. They remained at the Pecan Grove several hours when they returned to a local hotel. The following afternoon Patterson purchased an 18 inch crawbar to be used in a contemplated burglary. About 7:30 or 8:00 that night, Patterson and Butler again went to the Pecan Grove and were met outside by Claude Shields. About 8:30 the three men left in a car and broke into the residence of Dr. Black but were unable to find the safe. They left but, at the insistence of Shields, soon returned to make a further search. On the second trip they found the safe, knocked off the combination, but were unable to open the safe. They then sought to remove it from the house but it was too heavy for them to handle. The three men went back to the Pecan Grove where in a few minutes six men from Georgia, whom Shields knew, drove up. After some discussion, three of the men from Georgia agreed to assist in removing the safe and joined Shields, Patterson and Butler in returning to the residence of Dr. Black. They placed the safe in the trunk of a car and carried it to a garage or barn located about 400

feet to the rear of the Pecan Grove, where it was broken open and the money divided. After the contents were removed, the safe was placed in the trunk of Shields' car and hauled to an isolated place in that community. During his examination by the solicitor, Patterson denied that appellant was the Claude Shields who was with them on the night of the burglary, although he admitted that one of the men with them was introduced as Claude Shields and had charge of the Pecan Grove.

Another witness for the State, Tasker Brown, testified that while sitting in his car at the Pecan Grove about nine or ten o'clock on the night of the burglary, he overheard a conversation between Shields, Patterson, Butler and some men from Georgia to the effect that assistance was needed in removing a safe; and that shortly thereafter six men, including Shields, Patterson and Butler, left the Pecan Grove, stating that they were going to the home of Dr. Black. This witness further stated that some time later he fell asleep and was awakened by Claude Shields who asked him to haul a safe, which he refused to do; and that Shields then got his own car. Brown positively identified appellant as the person seen with Patterson and Butler on the night of the burglary.

The officers found the safe about a mile and a half east of the Pecan Grove. They discovered some of the cement packing and metal parts in appellant's barn located back of the Pecan Grove and some of the cement packing was also found in the trunk of his car. There were marks in the trunk of this car which appeared to have been made by a heavy object.

Appellant admitted that he operated the Pecan Grove and that there was no other person by the name of Shields connected with the place. He denied having ever seen either Patterson or Brown prior to being arrested for the crime and offered testimony to the effect that on the night of the burglary he remained continuously at his place of business until closing time. On cross examination, appellant expressed

the opinion that some enemy of his had thrown the cement in the trunk of his car.

The trial Judge was entirely correct in refusing appellant's motion for a directed verdict. The evidence fully sustains the verdict rendered by the jury. It is true that Patterson testified positively that appellant was not the Claude Shields who participated in the crime, but the State was not concluded by this statement. The jury could have rejected this part of Patterson's testimony and accepted the remaining portion as true. *State v. Nelson,* 192 S. C. 422, 7 S. E. (2d) 72; *Ex parte Nimmer,* 212 S. C. 311, 47 S. E. (2d) 716; *State v. Green,* 213 S. C. 170, 48 S. E. (2d) 641.

It is undisputed that appellant's name is Claude Shields and that he operated the Pecan Grove. No other person by that name worked at this place. Patterson admitted that one of the men who participated with him in the crime was in charge of the Pecan Grove. Brown positively stated that it was appellant who was seen by him on the night of the burglary in company with Patterson, Butler and the other men.

In addition to the testimony of Patterson and Brown, there are the circumstances that cement packing and metal parts of the safe were found in the barn to the rear of the Pecan Grove and that cement packing identified as that coming from Dr. Black's safe was found in the trunk of appellant's car. Counsel for appellant in their brief frankly state that "possession of the recently stolen safe in Claude Shields may be assumed," but it is contended that while such possession may be some evidence of participation in larceny, it affords no support for a conclusion that appellant committed burglary. We have held to the contrary. *State v. Campbell et al.,* 131 S. C. 357, 127 S. E. 439; *State v. Baker,* 208 S. C. 195, 37 S. E. (2d) 525; *State v. Kimbrough,* 212 S. C. 348, 46 S. E. (2d) 273. These decisions are in accord with the general rule elsewhere. *McNamara v. Henkel,* 226 U. S. 520, 33 S. Ct. 146, 57

500

L. Ed. 330; 9 Am. Jur., Burglary, Sections 60, 64, and 74. The case of *State v. Lyles,* 211 S. C. 334, 45 S. E. (2d) 181, does not, as counsel for appellant seem to think, lay down a different rule. It was there held that the evidence was insufficient to sustain a conviction on the charge of breaking and entering a railway car in the nighttime with intent to commit the crime of larceny. While in that case the defendant was found in possession of goods stolen from the railroad car, there was no evidence that said car was broken into in the nighttime. In the instant case it is undisputed that a burglary was committed and the burglary and larceny are shown to have been parts of the same transaction.

Judgment affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.