17768

STATE, Respondent, v. Ray Landy YOUNG, Appellant
(119 S. E. (2d) 504)

*Messrs. Clarence Cappell* and *Leo H. Hill,* of Greenville, *for Appellant,*

118

*James R. Mann, Esq., Solicitor,* of Greenville, *for Respondent,*

April 18, 1961.

TAYLOR, Chief Justice.

Appellant was tried and convicted at the October, 1959, Term of General Sessions Court for Greenville County, of

the charge of having murdered one John Kehayas and sentenced to be executed.

All prospective jurors were placed upon their individual *voir dire*. The defense, at that time, requested that the following question be asked the prospective jurors: "If it develops under the testimony and evidence that the defendant is guilty of murder, would the fact that he is a Negro stand in your way in determining a recommendation to mercy?" This request was refused by the trial Judge.

The Statutory questions contained in Sec. 38-202, Code of Laws of South Carolina, 1952, were propounded to each juror individually; and after each juror was examined on his *voir dire,* if found to be qualified by the presiding Judge, he would state: "Unless there is some other question the juror is qualified." Upon occasion other questions were propounded. but the trial Judge refused the above-quoted request, stating that the question presupposed the guilt of the accused and further that the Court's examination would cover the request.

In accord with one of the provisions of Sec. 38-202, *supra,* inquiry was made of each prospective juror as to whether he had expressed or formed any opinion or was sensible of any bias or prejudice therein. In each case this question was answered in the negative; therefore, each juror stated that he was not sensible of any bias or prejudice for any cause. The question of the impartiality of the juror is addressed to the discretion of the trial Judge; *State v. Prater,* 26 S. C. 198, 21 S. E. 108; and the scope of inquiry on *voir dire* is within the sound discretion of the Circuit Judge, *State v. Carson,* 131 S. C. 42, 126 S. E. 757; *State v. Nance,* 25 S. C. 168; and he has the exclusive power to determine a juror's competency and a finding on such is not reviewable except for error of law, South Carolina Constitution, 1895, Art. 5, Sec. 4; *State v. Faries,* 125 S. C. 281, 118 S. E. 620. If the question of the indifference of a juror is a mere question of fact, it is not reviewable upon

appeal, *State v. Haines,* 36 S. C. 504, 15 S. E. 555; *State v. Robertson,* 54 S. C. 147, 31 S. E. 868; *State v. Fuller,* 229 S. C. 439, 93 S. E. (2d) 463; unless the conclusion of the trial Judge is wholly unsupported by the evidence, *State v. Williamson,* 65 S. C. 242, 43 S. E. 671; *State v. Mittle,* 120 S. C. 526, 113 S. E. 335. If there is evidence, however, tending to support the finding of the juror's competency, there is no error of law, *State v. Faries, supra.*

In *State v. Bethune,* 86 S. C. 143, 67 S. E. 466, 468, defense counsel requested that the following question be propounded to the proposed juror: "Whether, in spite of the fact that the defendant at the bar is a Negro, he would be influenced thereby in passing on the evidence." This request was refused and this Court held that there was no error as the trial Judge had already questioned the jurors as provided in the statute; and in the later case by the same title, reported in 93 S. C. 195, 75 S. E. 281, 282, the Court stated with respect to this same question: "The juror had already sworn that he was not conscious of any prejudice or bias for or against the prisoner. Therefore his answer to the proposed question if he had been allowed to answer must have been in the negative."

In instant case the defendant, a Negro, was present, of course, at the time and the fact that he was a Negro was obvious to all. Each prospective juror stated that he was not sensible of any bias or prejudice. The trial Judge felt that it would have been improper to submit the proffered question for the reason that it presupposed his guilt and further that the statutory questions fully covered the subject. Their answers that they were not conscious of any bias or prejudice could mean only that they were not conscious of any bias or prejudice for any cause. The statutory questions encompassed the request, and we find no abuse of discretion amounting to error of law in refusing the question as presented.

Defendant next contends that the Court erred in propounding additional questions to two of the prospective

jurors with respect to their understanding of the term "capital punishment." The prospective jurors, M. Goodwin, Jr., and T. B. Earle, both Negroes, were the fourth and fifth jurors examined on their *voir dire*. While Goodwin was being questioned, the following transpired:

"Q. Do you know of anything which would embarrass you, if you are chosen to serve as a juror? A. No, sir.

"Q. Are you opposed to capital punishment? A. No, sir.

"Q. You know what capital punishment is? A. I do.

"Q. Well, are you opposed to capital punishment? A. Yes, sir.

"Q. Are you opposed to capital punishment? A. I'm not.

"Q. Now, you said yes and you said no. Now, do you understand what capital punishment is? A. I understand what it is.

"Q. What is it? A. Capital punishment is where a defendant is found guilty.

"Q. Capital punishment is provided, I'll explain it to you, in certain cases, for instance rape or murder, if a defendant is found guilty as charged and not recommended to the mercy of the Court, then the punishment provided for in such cases is death by electrocution. That's what is meant by capital punishment. Now, I ask you do you understand what's meant by capital punishment? A. Yes, sir.

"Q. Well, now are you opposed to capital punishment? You know what opposed means? Are you against it? A. I'm not against it.

"Q. Well, would you then if the evidence warranted it, would you under those conditions vote for a verdict of guilty if it meant electrocution? A. Yes, sir.

"Q. You would? A. Yes.

"Q. Unless there is some other question, the juror is qualified.

"Clerk of Court: What says the State?

"Solicitor Mann: Excuse him."

Upon examination of the prospective juror, Earle, the following transpired:

"Q. Are you opposed to capital punishment? A. No, sir.

"Q. You understand what capital punishment means? A. I think I do.

"Q. Well, I didn't ask you if you thought. Tell me what it is. What is it? What's your idea about capital punishment? A. I think it's giving the, if he's guilty say so and if he's not guilty, say he's not; we're not supposed to try— we're supposed to be square about it.

"Q. Of course, you're supposed to be fair; but here's what the punishment means under the law. In certain cases such as murder and rape the law provides that if you or I, for instance, were charged with rape or certain crimes and we were convicted straight out the punishment for that is death by electrocution unless the jury recommends mercy. So then if you are chosen as a juror on this case and the evidence should be such or may be such as to warrant a jury in finding defendant guilty of murder, which would mean death by electrocution, would you be opposed to that or would you be in favor of such verdict? A. In favor.

"Q. You would be in favor of it? In other words, if the testimony showed in any given case that the defendant should be electrocuted then you would not be opposed, is that right? A. No, sir, I would not be opposed.

"Q. You would not be opposed. Very well, unless there is some other question I think the juror is qualified.

"Clerk of Court: What says the State?

"Solicitor Mann: Excuse him.

"Clerk of Court: Just go back and have a seat, T. B."

The questions complained of became necessary by reason of the confusing or unsatisfactory replies to the questions necessarily propounded in order to determine the juror's qualifications. The scope of inquiry relative thereto was a matter within the discretion of the trial Judge, and we see no abuse thereof. Further, both having

been excused by the State, defendant could not have possibly suffered any prejudice thereby.

Exceptions III and IV present the question of whether the Court erred in admitting the written confession of defendant into evidence and oral testimony explaining its form and substance and the circumstances surrounding its taking. There is no presumption of law that a confession by a defendant is voluntarily given and the burden is upon the State to prove that the proffered confession was voluntarily given, *State v. Branham,* 13 S. C. 389; *State v. Workman,* 15 S. C. 540; *State v. Carson,* 36 S. C. 524, 15 S. E. 588; *State v. Rogers,* 99 S. C. 504, 83 S. E. 971; *State v. Fuller,* 227 S. C. 138, 87 S. E. (2d) 287; *State v. Chasteen,* 228 S. C. 88, 88 S. E. (2d) 880; *State v. Bullock,* 235 S. C. 356, 111 S. E. (2d) 675. The circumstances necessary to prove the voluntary nature of a given confession vary with the individual case. The disclosure of the circumstances surrounding taking of a confession is often necessary to determine whether the confession was given voluntarily, and it is not error to propound proper questions. We see no error in the questions propounded with respect to the circumstances under which the confession was obtained.

Defendant specifically objects to the testimony of the police officer, L. W. Hammond. An examination of this testimony reveals that it principally dealt with conversations had with defendant prior to the giving of the written confession and his testimony in no way materially varied the written confession.

As to the form, it appears that the confession was taken by one inexperienced in such matters, and the words of the arresting officer are not set off in a separate paragraph from those of defendant. However, upon examination it is evident to any one able to read and understand just which statements were made by the officer and where the confession of defendant began. The fact that there

are unexplained statements in a confession does not render it inadmissible. It, of course, must be considered in its entirety, but the rule that a confession is to be considered in its entirety does not compel the jury to give the same credence to every part of it. It may attach such credit to any part as it deems it worthy of and may reject any portion of it which it does not believe. All of it must be weighed carefully by the jury and on all of the circumstances surrounding the case, it must determine how much of it it will receive and how much it will reject. 22 C. J. S., Criminal Law, § 842, p. 1479.

The other exceptions relate to so much of the charge that it is reported in full for the sake of clarity:

"Mr. Foreman and Gentlemen of the jury, first of all I want to thank Mr. Cappell and Mr. Hill for representing the defendant as they were appointed by Judge Martin to do so. That is a part of a lawyer's duty and they have performed their duty well and the Court wishes to thank them for their services.

"This is the case of the *State versus Ray Landy Young* and in the indictment he is charged with murder. Upon his arraignment he pled not guilty and, of course, when he entered that plea the State is required to prove him guilty beyond all reasonable doubt before you would be warranted in bringing in a verdict of guilty in any degree.

"What is murder? I imagine you gentlemen would want to know that as defined by our laws. Murder is the felonious killing of a human being with malice aforethought either expressed or implied. So you see in order for there to be murder the State must not only establish the felonious killing but it must also establish that there was malice present. So what is malice? Malice has been defined by our Courts as a term of art importing wickedness and hatred and a determination to do what one then knows to be wrong and without just cause or excuse or legal provocation. Malice may also be defined as the wilful, intentional doing of a

wrongful act without just cause or excuse. Malice, gentlemen, need not be in the mind of the one doing the wrongful act any particular length of time before the act. If it is present in the mind any length of time before the act and at the time of the act and accompanying and prompting the act then its presence would be sufficient. The law does not fix any time in which malice must exist to be recognized in the law. Once again, giving you the definition of murder, murder is the felonious killing of one human being by another with malice aforethought either expressed or implied. And using those terms expressed or implied is not to indicate there are two kinds of malice because there are not. These words do not import that there are two kinds of malice but they only relate to the method of proof; for instance, in the case of expressed malice, the proof is positive and in the case of implied malice the proof is inferential. So then, as just stated, you will see that in order for one to be convicted of murder the State is not only required to prove beyond all reasonable doubt the felonious killing but it is also required in similar degree to prove that there was malice and malice may be defined in its simplest form as the willful, intentional and deliberate doing of a wrongful thing without just cause or excuse.

"The first question, of course, which you will want to decide is whether or not there has been a felonious killing by the defendant and if you find there has been a felonious killing by the defendant and if you find there has been such a killing then you would next decide whether or not that killing was done with malice aforethought either expressed or implied.

"Certain defenses are set up by the defendant and you have the right to consider all and every bit of testimony which you have heard. All of the testimony is for you gentlemen. You have a right and should consider any and all testimony which has been presented.

"Now, there are two kinds of evidence. One is direct and the other is circumstantial; for instance, in direct evidence,

gentlemen, a person sees a thing, hears a thing or perceives of certain things by the exercise of his senses and then comes into Court and relates what he saw, what he heard or what he learned and that is called positive or direct evidence. Then what is circumstantial evidence? Circumstantial evidence means proof of some other fact or facts from which taken individually or collectively the existence of the particular fact in question may be inferred as a necessary consequence. If there be circumstantial evidence in any given case the law requires that each fact or fact of each circumstance relied on to show guilt must be proven to the satisfaction of the jury beyond a reasonable doubt and facts and circumstances if any so proven must be so connected and so linked together that they point conclusively to the guilt of the accused and exclude every other reasonable hypothesis. Indeed, crime may be proven by circumstantial evidence as well as by the direct testimony of eye witnesses. But the facts and circumstances relied on to show guilt must be proven beyond a reasonable doubt and the circumstances should be consistent with each other and with the guilt of the defendant and inconsistent with any reasonable theory of the defendant's innocence and must satisfy the jury of the guilt of the accused beyond a reasonable doubt and inconsistent with every other hypothesis except that of guilt. If there be circumstantial evidence introduced in a case by the prosecution to prove the guilt of the accused not only must the circumstances be proven but they must point conclusively, that is to a moral certainty to the guilt of the accused. They must be wholly and in every particular perfectly consistent with each other and they must further be absolutely inconsistent with any other reasonable hypothesis than the guilt of the accused. To convict on circumstantial evidence every circumstance relied on by the State as material must be strictly proven and all facts proven must be consistent with each other and taken together should be of conclusive nature and tendency producing reasonable and moral certainty that the accused and no one else committed the offense charged

and it is not sufficient that they create a probability though a strong one. In certain cases, Mr. Foreman and Gentlemen, the State may introduce both direct testimony and circumstantial evidence. As stated just a moment ago, all of the testimony or evidence which you have heard is for your determination.

"Relative to the question if there be any testimony in a given case showing that more than one person may have been involved therein, I charge you that all persons who are present, concurring and participating by some overt act in any crime are principals therein and the act which caused such crime is regarded in the law as the act of each and all so present and participating and concurring. There is no distinction in law under such circumstances in the degree of their guilt or the nature of their offense founded on the nearness or remoteness of their personal agency. One who is present, helping, aiding and abetting another or others in the execution of an agreement between them with a common purpose to commit a crime would be responsible for the act of any one of the party provided that such act was done pursuant and incidental to such common purpose. Just to illustrate, gentlemen, I happened to be looking last night at a comedy on television where the Kingfish and Andy, I believe, were trying to get out of the telephone slot an old nickel. Well, I believe the Kingfish was outside the telephone booth and Andy was inside the telephone booth. The Kingfish was watching, the other was trying to get the nickel out. Well, the mere fact that the one on the outside was not inside would make no difference in their degree of guilt because in such an instance the act of one would be the act of both if it was in the minds of both when they went there to get the nickel. So that's what the law means by saying that when two or more parties are engaged in the commission of a crime, the one watches, the other shoots, the law says it makes no difference who fired the fatal shot.

"I charge you, Mr. Foreman and Gentlemen, relative to any testimony which may have been offered in the case re-

lating to insanity that insanity in the law is defined by our Court as follows: It is that condition of a person's mind due to mental disease or general mental incapacity which renders him unable to distinguish moral or legal right from moral or legal wrong or to recognize the particular charge as morally or legally wrong. I further charge you that the law presumes every man sane, thus the burden of establishing the sanity of the accused is never on the prosecution. Insanity, however caused, is an affirmative defense and must be established by the preponderance or greater weight of the evidence. If there is a reasonable doubt as to whether such defense has been established, the defendant is entitled to the benefit of such doubt. I further charge you that a defense of insanity does not import an admission of the act charged which must be proven by the State as alleged in the indictment beyond a reasonable doubt. What is the test in this State? In order to relieve himself from responsibility for a criminal act by reason of mental unsoundness the defendant must show that he was under mental delusion by reason of mental disease or general mental incapacity and that at the time of the act he did not know that the act he committed was wrong or criminal or punishable either the one or the other because notwithstanding his mind may be diseased or generally incapacitated it is the law of this State that if he is still capable of forming a correct judgment as to the nature of the act as to its being morally or legally wrong, he is still responsible for his act and punishable as if no mental disease or general incapacity existed at all. In order to make out the defense of insanity to the charge of murder there must be sufficient proof to overcome by the preponderance of the evidence the presumption of sanity and any other proof by the State upon the issue so as to show a want of sanity with reasonable certainty. So you will see, Gentlemen, that it is the law in this State that the law presumes every man sane and should any defendant set up a plea of insanity the law says that it is his duty to prove that, not beyond all reasonable doubt, but by the greater weight or the preponderance of the evidence.

"I further charge you that it is also the law of this State even though the fact that a person had been at one time adjudged insane and had been committed to the asylum it is not conclusive of his mental condition but the question is what was his condition at the time he committed the alleged act, if he did commit it. I further charge you that the test of insanity as affording immunity from punishment in this State is whether the accused knew that the particular act with which he was charged was punishable under the laws of this State.

"I further charge you that even though a man's mind may be diseased or generally incapacitated if he is still capable of forming a correct judgment as to the nature of the act, as to its being morally or legally wrong, he is still responsible for his act and punishable as if no mental disease existed and the law presumes every man sane until the contrary is shown and insanity is never presumed or inferred from the commission by persons of any special act or neither is it presumed or inferred from the manner in which the act may have been committed.

"I charge you finally as to this that if one pleads insanity as a defense the burden is upon him to prove by the greater weight or preponderance of the evidence that at the time he committed the act he was insane; that is, that at the time he committed the act he was under a mental delusion by reason of mental disease or general incapacity and that he did not know that the act that he committed was wrong or criminal or punishable either one or the other.

"I also charge you that voluntary drunkeness is no excuse for committing crime. Intoxication is no excuse unless a defendant had indulged so much that his mind had become so impaired that he did not have enough brain matter left to distinguish right from wrong.

"I further charge you that if one voluntarily drinks intoxicating liquors and becomes intoxicated of whatever degree and if while in that condition commits an act which

would be a crime if it had been committed by a sober person the fact of drunkenness would not relieve the intoxicated person from such responsibility.

"I further charge you that although voluntary drunkenness is no defense to a crime, if you should find from the testimony in the case that the defendant did not become voluntarily drunk but that on account of his physical condition his mind was clouded then it would be the duty of the jury to take this fact into consideration in the reaching of your verdict.

"Relative to any confession which may have been offered in evidence; first of all, Gentlemen, what is a confession? That has been defined by our Courts as being a person's admission or declaration of his agency or participation in any given crime and is restricted to such acknowledgement of guilt. Now, if there be a confession offered in evidence, I charge you if a confession is made and if such confession was made freely and voluntarily and without fear or the remotest fear or duress or without reward or the slightest hope of reward the jury should consider it as part of the evidence so far as the case against the person making such confession is concerned. But unless such confession, if you find that there was one made, was made freely and voluntarily and without fear or duress of any kind and without reward or the slightest hope of reward, disregard it; otherwise, if you find it to have been made freely and voluntarily and made without hope of reward or the slightest hope of reward or fear or duress you have the right to give it such weight as you deem it proper. I repeat that a confession in order to be considered by a jury must have been freely made and voluntarily made.

"I think, Gentlemen, I have tried to cover the legal principles involved with the definitions of the applicable law, and I have so tried to express it in words simple in their meaning and hope that you understand the phraseology used.

"So, now, we come next, Gentlemen, to the fact that when a defendant is brought into our Courts for trial no matter

what the nature of the case may be, whether it be one for treason or whatever it may be you and I are always presumed to be innocent when we are brought into trial, in the Court of our State for trial, and that presumption follows us throughout the trial of our case and it follows this defendant throughout the trial of his case and remains with him until it has been removed by the introduction of competent evidence to prove his guilt beyond all reasonable doubt. That is a legal presumption to which every defendant is entitled. It makes no difference who he may be or how heinous the crime alleged to have been committed may have been and that presumption follows him until it has been removed by the State proving him guilty beyond a reasonable doubt.

"The burden of proof is upon the State to prove the guilt and it does not shift to this defendant in this case except upon any testimony which may relate to the defense of insanity and then the burden shifts to him to prove by the greater weight or preponderance of the evidence the fact of insanity because that rests upon the defendant. The State is not required to prove the defendant sane at all but if insanity be pleaded by anyone the burden rests upon him who pleads to prove his plea by the greater weight or preponderance of the evidence.

"The defendant is entitled to the benefit of every reasonable doubt, not every doubt, Mr. Foreman, the law does not say that. It says that the defendant is entitled to the benefit of all and every reasonable doubt. What is meant by reasonable doubt? The law says that a reasonable doubt is a substantial doubt, not an imaginary doubt, not a whimsical doubt, not a fanciful doubt, but a doubt for which you can give a reason and it may arise from the lack of testimony or it may arise from the presence of such testimony so if you have a reasonable doubt as to any part of the case or the whole of the case, it is your duty to give the benefit of that doubt to the defendant; not all doubt, the law says all reasonable doubt. As you will notice throughout your serv-

ice as a juror you will find that the law makes reason the test.

"You are the judges of the facts, Gentlemen, and the credibility of the witnesses. In that field you are supreme and may it always be and remain. Now, you are put over there, Gentlemen, to find what the facts are in the case. You must take the law as the presiding judge tries to give it to you and the presiding judge must follow the established law. Just as a presiding judge is bound by the law, so are you bound by the law. You did not make the law. The presiding judge did not make the law. The solicitor did not make the law. The defense attorneys did not make the law. Our laws are made by duly elected representatives of the people and by Constitutional enactment and you took an oath when you were placed on your *voir dire* and you were sworn to go by the law and the evidence as may be presented. So then you are not making the law. You are to find the facts and then the applicable law is to be applied to your findings. You have a right to believe any witness which you heard. You have the right to believe everything that he may have said or it is within your power to believe a part that he says and not believe other things that he said or you may believe nothing that he says. You may believe one witness as against many or many against one. That's just another way, Gentlemen, of telling you that you are the sole judges of the facts and the credibility of the witnesses. When you go into the sanctity of your room, of course, you will carry with you the desire to find the truth in the case. What is the truth? You find the truth, Gentlemen, and let the chips fall where they may, whether it be in favor of the State or whether it be in favor of the defendant and when you base your verdict, when your verdict is based upon the truth then you will have complied with your oath. Go by the law and the evidence, but it cannot in good faith be based upon anything until you have found the truth in the case.

"You have been selected, you are not volunteers, but you have been selected as impartial jurors. Indeed, Gentlemen,

you were examined in open Court by the presiding judge and both the State and the Defendant were given an opportunity to ask any other question. You were passed by the State and by the Defendant. You were satisfactory. You took your seats, not as volunteers, but you took your seat to perform a duty which is devolved upon you by operation of law and every defendant in this country should be proud of the fact that he has the right to be tried by twelve of his fellow countrymen, not by a dictator, not by some king or by some judge but by twelve of his fellow countrymen and so then regardless of what a verdict may be in any given case as long as it is based upon the truth as revealed by the testimony and evidence in the case no one has a right to complain whatever it may be.

"Should a defendant be convicted of murder, the punishment therefor would be death by electrocution unless the jury saw fit to recommend mercy and a jury may recommend mercy for any reason it deems proper or for no reason at all, in which event life imprisonment would be mandatory. You may also consider the verdict of not guilty by reason of insanity and fourth, you may consider the verdict of not guilty. So, therefore, I have written these forms out, Mr. Foreman, on a yellow sheet of paper, purely the form in order to just assist you. I have told you orally, I have given you the written forms, so I repeat you may bring in one of the four verdicts: Not guilty; not guilty by reason of insanity; guilty of murder with recommendation to the mercy of the Court, which would mean life imprisonment; or guilty of murder, which would mean death by electrocution. Whatever verdict you bring in, Gentlemen, is entirely for your determination. The judge has nothing to do with the facts in the case, cannot even intimate any belief that he may have so if in ruling upon any legal questions any intimation may have been made as to anything the judge has thought about the facts in the case such was unintentional and, please, if any such were made entirely disregard it because you are the sole judges of the facts and the credibility of the witnesses.

"Now, will you please retire just outside. Let them go into the hall out there, the enclosed hall; before they go into their room."

Exceptions V, VI, VII, VIII and IX impute error on the part of the trial Judge's charge in that he made reference by way of illustration to "Kingfish and Andy." Reference to that portion of the charge complained of reveals that the only similarity between instant case and the "Kingfish and Andy" illustration is that two persons were involved, one possibly a more active participant than the other but both engaged in accomplishing a common purpose. We see no merit in this exception.

Exception VI imputes error contending that the "Kingfish and Andy" illustration amounted to an expression of an opinion by the trial Judge, the defendant having contended that another person was present and actually struck the fatal blow. Defendant himself testified that another person was present and participated in the robbery and slaying, and we do not construe the remarks of the trial Judge as expressing or intimating any opinion relative to the guilt or innocence of the defendant but rather as a statement of the law applicable where more than one person is jointly engaged in the commission of an unlawful act.

Exception VII imputes error in that the illustration given was tantamount to directing the jury to find the defendant guilty in violation of Art. V, Sec. 26, Constitution of South Carolina, 1895, which provides: "Judges shall not charge juries in respect to matters of fact, but shall declare the law." In *Norris v. Clinkscales,* 47 S. C. 488, 25 S. E. 797; *State v. Johnson,* 85 S. C. 265, 67 S. E. 453; and *State v. Thorne,* 237 S. C. 248, 116 S. E. (2d) 854, it was held that "a judge violates this provision when he expresses in his charge his own opinion upon the force and effect of the testimony, or any part of it, or intimates his views of the sufficiency or insufficiency of the evidence in whole or in part." [47 S. C. 488, 25 S. E. 806]. How-

ever, a Judge does not violate this provision of the Constitution by the use of hypothetical or supposed facts for the purpose of illustrating some principle of law. *Norris v. Clinkscales, supra.* See, also, Limitations on Trial Judge's Commenting on the Evidence in South Carolina Jury Trials, by Robert McC. Figg, Jr., South Carolina Law Quarterly, Vol. 5, page 214.

Exception VIII imputes error in that the illustration involved comic characters and was improper in view of the gravity of instant case. We are unable to see where defendant suffered any prejudice by the illustration given. The record is bare of anything that would indicate that the illustration was given in a spirit of levity, and we are sure that the learned and able trial Judge, knowing him as we do, would not permit such under the circumstances.

Exception IX imputes error in that the illustration assumed as a fact that two parties were present and acting in concert. The defendant testified to the effect that another person was present and participating. It, therefore, became incumbent upon the trial Judge to charge the law applicable to the facts as they were developed by the testimony. We find no merit in this exception and Question No. 4 is resolved against defendant's contention.

Question V, Exception X, imputes error in that the jury was instructed that it might disregard a portion of or all of a witness's testimony. That portion of the charge complained of appears as follows:

"You are the judges of the facts, Gentlemen, and the credibility of the witnesses. In that field you are supreme and may it always be and remain. Now, you are put over there, Gentlemen, to find what the facts are in the case. You must take the law as the presiding judge tries to give it to you and the presiding judge must follow the established law. Just as a presiding judge is bound by the law, so are you bound by the law. You did not make the law. The presiding judge did not make the law. The solicitor did not make the law.

The defense attorneys did not make the law. Our laws are made by duly elected representatives of the people and by Constitutional enactment and you took an oath when you were placed on your *voir dire* and you were sworn to go by the law and the evidence as may be presented. So then you are not making the law. You are to find the facts and then the applicable law is to be applied to your findings. You have a right to believe any witness which you heard. You have the right to believe everything that he may have said or it is within your power to believe a part that he says and not believe other things that he said or you may believe nothing that he says. You may believe one witness as against many or many against one. That's just another way, Gentlemen, of telling you that you are the sole judges of the facts and the credibility of the witnesses. When you go into the sancity of your room, of course, you will carry with you the desire to find the truth in the case. What is the truth? You find the truth, Gentlemen, and let the chips fall where they may, whether it be in favor of the State or whether it be in favor of the defendant and when you base your verdict, when your verdict is based upon the truth then you will have complied with your oath. Go by the law and the evidence, but it cannot in good faith be based upon anything until you have found the truth in the case."

In *State v. Smith*, 227 S. C. 400, 88 S. E. (2d) 345, 350, this Court used the following language:

"It is well settled that all questions of fact are for the jury. While it is the duty of the Judge to rule on the admissibility of the evidence, the weight of the evidence is entirely for the jury; and it is the jury's duty to weigh such evidence and determine what the facts are from the testimony as it is heard from the witness on the stand. Hence, the jury must necessarily pass upon the credibility of the witnesses; and, in doing so, it may take into consideration the witnesses' opportunities for observation and knowledge of the matters concerning which they have testified and any prejudice or bias such witnesses may have, their demeanor on the stand,

in fact, anything which in the jury's good judgment tends to show whether or not the witnesses are telling the truth, the object being to find the truth whether it comes from a witness for the prosecution or the defense. The jury may believe one witness and disbelieve another, may believe one portion of a witness' testimony and disregard another portion of such testimony. Having determined the credibility of the witnesses and having concluded what the facts are in the case, it is the jury's duty to apply the law as charged by the Court to the facts as determined by it and thus arrive at its verdict. *State v. Nelson*, 192 S. C. 422, 7 S. E. (2d) 72; *Ex parte Nimmer*, 212 S. C. 311, 47 S. E. (2d) 716; *State v. Shields*, 217 S. C. 496, 61 S. E. (2d) 56."

We find no merit in this exception.

Exception XI imputes error in that the Judge in his charge stated:

"The burden of proof is upon the State to prove the guilt and it does not shift to this defendant in this case except upon any testimony which may relate to the defense of insanity and then the burden shifts to him to prove by the greater weight or preponderance of the evidence the fact of insanity because that rests upon the defendant. The State is not required to prove the defendant sane at all, but if insanity be pleaded by anyone the burden rests upon him who pleads to prove his plea by the greater weight or preponderance of the evidence."

It is contended that the use of the word "shift" was used in the sense that the burden shifted in such a way that it was upon defendant to prove his innocence. We do not so construe the charge as it clearly states that the burden of proof is upon the State to prove the guilt of a defendant and *it does not shift to the defendant except upon testimony relating to his insanity and then the burden shifts to the defendant by the greater weight or preponderance of the evidence* (not beyond a reasonable doubt). If insanity be pleaded by anyone, *the burden rests upon him*

*who so pleads to prove his plea by the greater weight or preponderance of the evidence.* Further, the trial Judge in his charge made reference upon nine occasions to the requirement that the quantum of proof required of the State was beyond a reasonable doubt before defendant could be convicted as charged. Although the word "shift" was used, the meaning of this portion of the charge is that where one pleads insanity the burden is upon him to establish such plea as one is always presumed to be sane by the State. We see no merit in this exception. *State v. Bundy,* 24 S. C. 439; *State v. Deschamps,* 134 S. C. 179, 131 S. E. 420; *State v. McGhee et al.,* 137 S. C. 256, 135 S. E. 59; see, also, 20 Am. Jur. 134, Sec. 132.

Exceptions XII and XIII complain that the Court did not properly charge the jury with respect to its duty to decide the voluntary character of the confession and as to the respective roles of the Judge and jury in passing upon the admissibility of the confession. An examination of the charge reveals that that portion of the charge dealing with the confession is commenced with the words "Relative to any confession" and then the jury is instructed as to the essential elements necessary before it can consider the confession; and in closing his remarks relative thereto, he states: "I repeat that a confession in order to be considered by a jury must have been freely made and voluntarily made." The Judge did not state specifically to the jury that it was the duty of the trial Judge to first pass upon the admissibility of the confession before submitting it to the jury for its consideration and defendant charges error thereby. Had the Judge concluded that the proffered confession had been involuntarily given he would have ruled it inadmissible and the jury would not have been concerned therewith. Had the Judge charged the jury his duties with respect thereto, there would have been no error as this procedure has been approved in many cases; but we see no logical reason to require the trial Judge to explain to the jury the duties of the trial Judge with respect to an alleged con-

fession as it would necessarily entail telling the jury that he had concluded that the confession had been voluntarily given and was, therefore, admissible. Such determination by one whose mind had been trained to weigh testimony and determine its force and effect would hardly escape the attention of the laymen who compose the jury. See *State v. Thorne, supra.* He charged them fully with respect to their duties, and we are of opinion that defendant was in nowise prejudiced by the trial Judge failing to instruct the jury that under the law he had concluded that the proffered confession had been freely and voluntarily made.

Exception XIV imputes error when the trial Judge charged: "Go by the law and the evidence, but it cannot in good faith be based upon anything until you have found the truth in the case." A consideration of the charge as a whole does not bear out defendant's contention that with the use of the word "truth" the trial Judge injected an indefinable element into the case. To arrive at the truth is the ultimate goal of every case. There are many rules governing the manner in which this must be done, but they are designed to aid in arriving at a verdict which speaks the truth. We see no merit in this exception.

All exceptions have been dealt with as presented; but in keeping with the rule of *in favorem vitae,* we have carefully examined the record for any error which might result in prejudice to defendant's rights and have found none.

Counsel appearing for defendant were appointed by the Court. They have acquitted themselves admirably although receiving no compensation therefor, and it is with appreciation that the Court acknowledges their services.

For the foregoing reasons, we are of opinion that all exceptions should be dismissed and the judgment of the Court affirmed; and it is so ordered. Affirmed.

OXNER, LEGGE and Moss, JJ., concur.