19292

The STATE, Respondent, v. Cleveland Louis SELLERS, Jr., Appellant
(183 S. E. (2d) 889)

*Fred Henderson Moore, Esq.,* of Charleston, and *Howard Moore, Jr., Esq.,* of Atlanta, Georgia, *for Appellant,* cite:

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Joseph C. Coleman, Asst. Atty. Gen.,* of Columbia, and *Julian S. Wolfe, Esq., Sol.,* of Orangeburg, *for Respondent,* cite:

September 28, 1971.

LEWIS, Justice.

Appellant, Cleveland Louis Sellers, has appealed from his conviction of the offense of common law riot. He contends that the lower court should have entered a judgment of acquittal upon the grounds that (1) there was no evidence to sustain his conviction and (2) he was deprived of a speedy trial. Alternately, he seeks a new trial upon the grounds that the trial judge erred in (a) refusing a motion for mistrial because appellants character was unlawfully and prejudicially placed in issue, (b) refusing to permit prospective jurors to be questioned as to the existence of racial prejudice and bias against the appellant, (c) refusing to excuse jurors who stated, in answer to *voir dire* questions, that they believed law enforcement officers more likely to tell the truth, and (d) refusing to quash the indictment on the ground of racial discrimination in the composition of the grand and petit juries.

We consider first appellant's contention that there was no evidence to sustain his conviction of common law riot which is defined in our decisions as "a tumultous disturbance of the peace, by three or more persons assembled together, of their own authority, with the intent mutually to assist each other against any one who shall oppose them, and putting their design into execution in a terrific and violent manner, whether the object was lawful or not." *State v. Connolly,* 3 Rich. 337, 338. This definition was recently under attack on constitutional grounds in *Abernathy v. Conroy,* 4 Cir., 429 F. (2d) 1170, where the offense was analyzed in the light of our decisions.

The charges against appellant grew out of his alleged participation in a riot at or near a racially segregated bowling alley in Orangeburg, South Carolina, on February 6, 1968. On that occasion, officers were injured by those rioting and extensive damage was done to property. Appellant was present in the crowd at the time. The fact that there

was a riot in which a large number of people participated is not questioned. Appellant's contention is that, although he was present, there was no evidence that he personally committed an act of violence and, therefore, he could not be guilty of the crime of riot.

While it is true that there was no evidence of any act of violence committed personally by appellant, there was testimony that he was seen moving about in the crowd, from group to group, talking to each group, and that, as he would communicate with them, "they would become boisterous, demanding, threatening, hollering some obscenities." As he would move about the crowd and talk to the various groups, "the situation continuously deteriorated and from a standpoint of law and order, it got worse and worse." One officer testified that, during the riot, appellant "got on the back of an automobile * * *. At this time Cleveland Sellers (appellant) said, 'Burn baby, burn, burn' and pointed toward the A. and P. store * * *. There were matches being struck, cigarette lighters flashing and in the meantime, there were some of the people edging down toward the entrance to the bowling alley." The acts of violence, resulting in injury to officers and damage to property, followed the above activities of appellant.

The principle is well settled that all persons, who are present, aiding and abetting in the commission of a misdemeanor, are principals. In accordance with that rule, "any person who encourages, incites, promotes, or takes part in a riot is guilty of riot as a principal." 54 Am. Jur. (2d), Mobs and Riots, Section 20.

There is ample evidence to sustain the inference that the conduct of appellant encouraged, incited, and promoted the riot. Such participation sustains the finding that appellant was guilty of the crime as charged.

The second question concerns the alleged failure of the State to grant appellant a speedy trial. He was arrested on February 9, 1968, indicted in May 1968, and tried in September 1970.

He was therefore brought to trial approximately two and one-half years after his arrest and indictment.

Appellant concedes that at no time did he move for immediate trial or to dismiss the indictment during the period from his arrest until the case was called for trial in September 1970, although he was released on bail and represented by counsel. He also concedes that "several continuances" of the trial were granted at his request. His counsel states in the brief that "the first (continuance) was obtained due to change of counsel in May of 1968, and the second obtained in May 1970 because of the pendency of the appeal in *Abernathy v. Conroy,* 429 F. (2d) 1170 (4th Cir., 1970), pertaining to the constitutionality of common law riot, and because appellant was in the midst of taking his final examinations at Harvard University in Cambridge, Massachusetts." When appellant requested and obtained a continuance of his trial in May 1970, he apparently had no complaints at that time of any previous failure of the State to grant him a speedy trial. He was subsequently tried in September 1970, about four months later.

Under the foregoing facts, appellant waived his right to a speedy trial. *Wheeler v. State,* 247 S. C. 393, 147 S. E. (2d) 627; *United States v. Hill* (4th Cir.), 310 F. (2d) 601.

The remaining questions involve alleged errors in the trial which, appellant contends, entitle him to a new trial. The first concerns the admission of testimony by an agent of the Federal Bureau of Investigation that the F.B.I. had a file on the appellant and that information gathered on appellant's activities was placed in that file. Appellant's character and reputation was not in issue.

Objection to the admission of the foregoing testimony was overruled, as was a motion for a mistrial. Appellant contends that the testimony was highly prejudicial because it tended to impeach his character by imputing to him prior illegal conduct such as to make him a threat to the peace and order of the community.

It is a well settled rule of criminal procedure that the State cannot in any way attack the character and reputation of the defendant unless the defendant has put his character and reputation in evidence.

In the context in which the testimony in question was admitted, we do not think that it constituted an attack on the character and reputation of the appellant or that it was in any way prejudicial. It did not imply that appellant had a criminal record nor that he had been charged with any crime. This becomes quite evident when the testimony in question is considered in the light of the officer's subsequent testimony, on cross examination, that his observations of appellant's activities were placed in the file and that he knew of no crime, State or Federal, which appellant had committed on the several occasions when he had been observed.

Appellant next assigns error in the refusal of the trial judge to propound certain requested *voir dire* questions which sought to elicit from the jurors their views of racial integration.

Appellant submitted a list of 192 proposed *voir dire* questions. He lists in his brief the following as examples of the questions which the trial judge refused and to which he now objects:

30. Do you favor complete racial integration of all American life?

79. Do you believe that it would be best for both races if White and Black people had as little direct contact as possible?

144. Is there anything you have heard or read about Black people that gives you the slightest doubt that you could not give the defendant a fair trial in this case?

147. Have you ever belonged to any organization, social or otherwise, whose membership was limited to White people only?

The trial judge refused to allow the above questions and others submitted of similar import. Instead, the jurors were

asked, in addition to the inquiries required by Section 38-202, 1962 Code of Laws, the following question:

Would the fact that the defendant is a Negro and a former program Secretary of the Student Non-violent Committee and a member of the Student Coordinating Committee cause you to be prejudiced against the defendant in any way?

After the inquiries required by Section 38-202 are made, any further examination of a juror on *voir dire* is left to the discretion of the trial judge.

The trial judge, in the exercise of his discretion, concluded that the scope of the *voir dire* examination of the jurors, which he conducted, was sufficiently broad to assure that every juror presented was unbiased and impartial. We find nothing in this record to indicate that the refusal to propound the questions submitted by appellant constituted an abuse of discretion. *State v. Brooks,* 235 S. C. 344, 111 S. E. (2d) 686; *State v. Young,* 238 S. C. 115, 119 S. E. (2d) 504.

At the request of appellant, the jurors were asked the following question on their *voir dire* examination: Do you believe that law enforcement officers, because they are law enforcement officers, are more likely to tell the truth than other witnesses in a trial?

Some of the jurors gave an affirmative answer to the foregoing question and appellant sought, unsuccessfully, to have the jurors, who so answered, disqualified. The refusal of the trial judge to disqualify these jurors is the basis of an assignment of error.

Immediately following the above question, the jurors were asked, as requested by appellant: "Do you believe that black people because of their race are more likely to lie under oath than other people?" Each juror answered in the negative. Additionally, each juror stated that he knew of no reason why he could not give the State and the defendant a fair and impartial trial based on the law and the facts in the case.

The answer to the question now in issue must be considered in the light of the entire *voir dire* examination. When this is done, we find no reversible error.

The jurors who stated that they believed a law enforcement officer more likely to tell the truth, because of his position, also stated that they did not believe that black people, because of their race, were more likely to falsify under oath; and that they could fairly and impartially try the case. The answers were not inconsistent. Many factors enter into the determination of the credibility of a witness. In determining that the jurors were qualified, the trial judge properly construed the answers of the jurors to mean that, while they generally considered the fact, that a witness was an officer, likely to favorably affect his credibility, such did not keep them from weighing his testimony in the light of the particular facts and circumstances and giving to the parties a fair and impartial trial. The jurors in question were qualified and the trial judge properly so held.

Finally, appellant contends that the lower court erred in refusing his motion to quash the indictment upon the ground that discrimination against the members of the Negro race was practiced in Orangeburg County in the preparation of the jury box and in the selection of jurors. There is a total absence of any factual support for the charge of racial discrimination and the lower court properly denied the motion.

All exceptions are overruled and the judgment is affirmed.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.